# NEWBURYPORT WATER COMPANY *v.* NEWBURYPORT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 182. Argued March 16, 1904.—Decided April 4, 1904.

Where the contention as to want of jurisdiction of the Circuit Court, arising from the alleged absence of constitutional questions, is well founded, it is the duty of this court not simply to dismiss the appeal, but to reverse the decree at appellant's costs with instructions to the Circuit Court to dismiss the bill for want of jurisdiction.

Jurisdiction of the Circuit Court does not arise simply because an averment is made that the case is one arising under the Constitution or laws of the

United States if it plainly appears that such averment is not real or substantial but is without color of merit.

Where the charter of a water company is not exclusive, and is subject to repeal, alteration or amendment at the will of the legislature no deprivation of property without due process of law or impairment of the obligation of a contract can arise from an act of the legislature empowering the city to erect its own waterworks.

Where the legislature of a State authorizes a city to erect its own waterworks but on the condition that it purchase the plant of a company then supplying it, at a valuation to be fixed by judicial proceedings as provided in the act, and the water company institutes proceedings under the act, it cannot thereafter claim that because certain incorporeal rights, franchises and possible future profits were not allowed for in fixing the valuation, that its property was taken without due process of law, and, changing its position, cause its voluntary acceptance to become an involuntary one in order to assail the constitutionality of the legislation in question.

THE Newburyport Water Company, appellant, is a Massachusetts corporation created by special act on April 23, 1880, which act was subject to alteration, amendment or repeal at the pleasure of the legislature.

As authorized by its charter, the water company established a water supply system in the city of Newburyport. On August 17, 1880, the water company entered into a contract with the city to furnish water, for fire purposes, during a term of twenty years, with the privilege to the city of purchasing the waterworks property after the expiration of ten years.

In the year 1893 the legislature passed an act, (chapter 471,) conferring power upon the city, if sanctioned by popular vote, to provide its own water plant, to supply itself and its inhabitants with water, and, if also approved by the voters, to acquire by agreement with the water company its plant. The voters of the city, however, decided not to purchase the plant, but to establish and maintain an independent water supply system. On June 14, 1894, an act, designated as chapter 474, was passed by the legislature, forbidding the city of Newburyport, in the event that the water company, within thirty days after the passage of the act, elected to offer its property for sale to the city, from acting under the authority of chapter 471 of

the acts of 1893, unless the city first purchased the plant of the company. A copy of the act is inserted in the margin.[1]

Availing themselves of the privilege conferred by this act,

---

[1] CHAPTER 474.

An act to provide for the purchase of the property of the Newburyport Water Company by the City of Newburyport.

*Be it enacted, etc., as follows:* SEC. 1. If, within thirty days after the passage of this act, the Newburyport Water Company shall notify the mayor of the city of Newburyport, in writing, that it desires to sell to said city all the rights, privileges, easements, lands, waters, water rights, dams, reservoirs, pipes, engines, boilers, machinery, fixtures, hydrants, tools and all apparatus and appliances owned by said company and used in supplying said city and the inhabitants thereof with water, said city shall not proceed to supply water to itself or its inhabitants under the authority of chapter four hundred and seventy-one of the acts of the year eighteen hundred and ninety-three, unless it shall have first purchased of said company the property aforesaid; and said company is authorized to make sale of said property to said city, and said city is authorized to purchase the same. Whenever said city shall, by a majority vote of the legal voters of said city present and voting thereon at a meeting called for that purpose, vote to purchase said property, notice of the desire of said company to sell the same having been given as hereinbefore provided, said company shall, within twenty days after the vote aforesaid, execute and deliver to said city proper deeds and instruments in writing, conveying to said city the property aforesaid, and said property thus conveyed shall thereupon become the property of said city, and said city shall pay to said company the fair value thereof, to be ascertained as hereinafter provided. If at the first meeting a majority of the voters present and voting do not vote to purchase said property, other meetings may be called and held therefor. In case the said city and the said company shall be unable to agree upon the value of said property, the Supreme Judicial Court, shall, upon application of either party and notice to the other, appoint three commissioners, two of whom shall be skilled engineers and the third learned in the law, who shall determine the fair value of said property for the purposes of its use by said city, and whose award, when accepted by the court, shall be final. Such value shall be estimated without enhancement on account of future earning capacity or good will, or account of the franchise of said company.

SEC. 2. In case said Newburyport Water Company shall convey its property to the city of Newburyport, in accordance with the provisions of the preceding section, said city shall manage and use the property thus conveyed for the purposes and under the provisions of chapter four hundred and seventy-one of the acts of the year eighteen hundred and ninety-three.

SEC. 3. The said city may, for the purpose of paying the necessary expenses and liabilities incurred under the provisions of this act, issue from

the stockholders of the water company voted to sell to the city
and served notice to that effect upon the mayor. The city,
by a popular vote, decided to buy. The water company
thereupon, on January 20, 1895, executed and delivered to the
city a deed of all its property, both corporeal and incorporeal.
In accepting the deed, however, the city served upon the water
company the notice printed in the margin.[1]

time to time bonds, notes or scrip to an amount sufficient for such purpose;
such bonds, notes or scrip shall bear on their face the words "Newburyport
water loan," shall be payable at the expiration of periods not exceeding
thirty years from the date of issue, shall bear interest payable semi-annually
at a rate not exceeding six per centum per annum, and shall be signed by
the treasurer of the city and countersigned by the water commissioners
provided for by chapter four hundred and seventy-one of the acts of the
year eighteen hundred and ninety-three. The said city may sell such
securities at public or private sale, or pledge the same for money borrowed
for the purposes of this act, upon such terms and conditions as it may deem
proper, provided that such securities shall not be sold for less than the par
value thereof. The city shall provide at the time of contracting said loan
for the establishment of a sinking fund, and shall annually contribute to
such fund a sum sufficient with the accumulations thereof to pay the prin-
cipal of such loan at maturity. The said sinking fund shall remain inviolate
and pledged to the payment of said loan, and shall be used for no other
purpose.

SEC. 4. In case said city shall, in violation of section one of this act, proceed
to supply itself or its inhabitants with water before making the purchase
aforesaid, the Supreme Judicial Court shall, upon petition of said company,
have jurisdiction in equity to enjoin said city from so doing until it shall
have made such purchase.

SEC. 5. This act shall take effect upon its passage.

Approved June 14, 1894.

[1] To the Newburyport Water Company:

In accepting the conveyance made to the city of Newburyport by the
Newburyport Water Company, dated January 29, 1895, and delivered to
the mayor on that day by the clerk of that corporation for examination, it
is not admitted, on behalf of the city, that any franchise is acquired by the
said city under such conveyance, or that the city is under any obligation to
make payment on account of any franchise of said corporation by reason
thereof.

It is further not admitted or claimed that the four filters, with their gates,
pipes, appliances and appurtenances, described in item 2 of said deed as
situated upon the second lot of land described in item 1 therein, are used
in supplying said city or its inhabitants with water, or that the city is bound
to pay for the same or any part thereof.

Under the deed of the water company the city took possession of the plant. The parties being unable to agree as to the sum to be paid, the water company petitioned the Supreme Judicial Court for the county of Essex, to appoint three commissioners to fix the amount, which was done. Hearings were had and the commissioners made an award of $275,000, but no allowance was made for the franchise or right of the water company to lay and maintain pipes in the streets and for its right to collect water rates or for the profits which the company might have made on the contract for furnishing water to the city for fire purposes, had not the sale of the plant to the city taken place. It is stipulated by counsel that the commissioners did not value such contract, "it being their opinion that the same in law could not be valued," and that although the water company offered the contract before the commissioners "no evidence of the quantity of water supplied to the city under the contract, nor any direct evidence of the cost of performing the contract or of its value to the company;" was introduced. The stipulation also recites—

"That counsel for the city in his closing argument asked counsel for the water company if he had waived the claim to have the contract valued, and the latter replied that he did not waive it, and was not prepared to say what use he should make of it. That thereupon counsel for the city proceeded to argue that the contract should not be valued; that the counsel for the water company in his closing argument mentioned the contract as one of the items of property which the company had parted with to the city, and urged, but not in this connection, that it was the duty of the commissioners to estimate the value of all of the property of the company as one whole."

The report on the award made by the commissioners was

---

It is further not admitted or claimed that the Newburyport Water Company has any right or authority to convey by said conveyance, or the city of Newburyport to accept or make payment for anything whatever, except according to provisions of chapter 474 of the act of 1894.

Adopted by a unanimous yea vote, six aldermen present and voting.

heard before a single justice of the Supreme Judicial Court, who
reserved for the full court whether the award should be re-
committed or be accepted.    The full court affirmed and ac-
cepted the award of the commissioners.    168 Massachusetts,
541.    A rehearing was applied for, but while the petition was
pending the water company brought the present suit in equity
in the Circuit Court of the United States for the District of
Massachusetts.    After the bringing of such equity suit the
petition for rehearing was dismissed.

. In the bill of complaint the foregoing facts, except as to the
recited provisions referred to as embraced in the stipulation,
were set out with much amplitude, and it was alleged that no
claim was made before the commissioners or in the state courts
(except in the petition for rehearing) that the act of 1894 was
repugnant to the Constitution of the United States.

In substance, the grounds for relief propounded in the bill
were that as the act, of the legislature which gave the privilege
to the water company to sell had been construed by the Su-
preme Judicial Court as not entitling that company, on the
sale by it made to the city, to compensation for its franchises
and other valuable incorporeal rights, that act as construed
amounted to a taking of the property of the water company,
against its consent, without due process of law and in violation
of the Fourteenth Amendment to the Constitution of the
United States.    The bill based this contention upon the charge
that as the legislative act which gave the company the privilege
to sell to the city, if it chose to do so, was coupled with the
right conferred upon the city, if the company did not sell, to
erect a water plant of its own, the sale by the company was
compulsory, since the execution by the city of the authority
to erect its own plant would have worked the ruin of the water
company.    In addition, it was charged in the bill that the
failure under the legislative act, of which the company had
availed itself, to value the future profits which the company
might have derived from its contract to furnish the city with
water, impaired the obligation of the contract arising from the

charter, in violation of the contract clause of the Constitution of the United States. Charging that it was the intention of the city to issue bonds for the purpose of raising funds with which to pay the award in question, the bill prayed an injunction and the appointment of a receiver to manage the property claimed by the water company, which it had conveyed to the city, until the controversy was finally determined. The ultimate and substantial relief sought by the bill was, first, a restoration to the water company of the property which it had conveyed to the city, with damages for its detention, and in the alternative that full compensation be awarded. The city, appearing specially for the purpose, moved to dismiss for want of jurisdiction. This, after hearing, was overruled. Thereupon a demurrer was filed to the bill, which, after argument, was overruled. Application was next made for a rehearing on the demurrer, and pending action thereon an answer and replication were filed. The application for a rehearing on the demurrer was overruled. A motion was then made for leave to file a special demurrer to that portion of the bill and prayer in which a right to a decree for compensation was asserted. This was refused, and thereafter, by consent of parties, the following order was made by the court:

"*Ordered:* That the constitutional question, to wit, whether or not the plaintiff has been deprived of its property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States, be first heard; and that all questions as to plaintiff's relief, if any, (including questions of valuation of the property alleged to have been taken,) await the determination of the constitutional question."

Soon afterwards a hearing was had upon the question referred to in said order, and the decision of the court was adverse to the water company. 103 Fed. Rep. 584. After this the court heard argument upon the contention of the water company that the act of 1894 impaired the obligation of its contract with the city, and in consequence violated section 10 of article I of the Constitution of the United States. It was decided that the

failure to value the contract in question "does not tend to prove that the act of 1894 was repugnant to the contract clause of the Constitution." The court having thus decided all the constitutional questions raised by the water company against that company, entered a final decree dismissing the bill. This appeal, directly to this court, was then taken.

*Mr. Lauriston L. Scaife* and *Mr. Robert M. Morse,* for appellant in this case and for the appellant in No. 183, argued simultaneously therewith:

As to jurisdiction and the question of taking of property without compensation.

The jurisdiction of the Circuit Court is to be determined wholly upon plaintiff's own allegations, and is not limited by defendant's denials, nor does it depend upon the result of the trial of any issues presented by the pleadings of both parties. 1 Gould & Tucker's Notes to Rev. Stat. 101; *Walla Walla Water Case,* 172 U. S. 1, 11; *City Railway Co.* v. *Citizen's Railway Co.,* 166 U. S. 557; *Vicksburg Water Co.* v. *Vicksburg,* 185 U. S. 65, 83.

The suits are of a civil nature in equity. *Moore* v. *Sandford,* 115 Massachusetts, 285; *Chicago &c.* v. *Minnesota,* 134 U. S. 418, 459. As to duress in equity suits, see *Brown* v. *Pierce,* 7 Wall. 205; *Baker* v. *Morton,* 12 Wall. 150; 1 Story's Eq. Jurisprudence, 13th ed. §§ 239, 700. The matter in dispute involves more than $2,000, and even if this were omitted from the bill it could be shown *aliunde. United States* v. *Freight Association,* 166 U. S. 290, 310; *Whiteside* v. *Haselton,* 110 U. S. 296.

The appeal was properly made directly to this court. *Walla Walla Water Case,* 172 U. S. 1; *Am. Sug. Ref. Co.* v. *New Orleans,* 181 U. S. 277; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540.

Under the Fourteenth Amendment the plaintiff was deprived by the State of its property without due process of law.

"Due process of law," under the Fourteenth Amendment,

requires compensation to be made or secured to the owner of private property taken under the authority of the State for public use.

This provision controls a taking, whatever may be its form or guise. *Chicago &c. R. R.* v. *Chicago,* 166 U. S. 266; *Scott* v. *Toledo,* 36 Fed. Rep. 395.

Whatever the provisions of the state statute, we are entitled to go behind the form and to show that what was authorized by the statute, as construed by the state court, was, in effect or in substance, a taking of plaintiff's property without compensation, under the form or guise of a sale which was apparently voluntary, but which was in reality compulsory in fact and in law. Cases cited *supra; Thompson* v. *Androscoggin &c. Co.,* 54 N. H. 545, 557; *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 155; *Austin* v. *Murray,* 16 Pick. 126; *Lake Shore &c. Co.* v. *Smith,* 173 U. S. 684, 693.

That the court looks at the "essence and effect" of the state statute in determining the constitutional question of a taking is further expressly shown in *Missouri Pac. R. Co.* v. *Nebraska,* 164 U. S. 403.

All the so-called "railroad-rate cases" are based upon the principle that the form of the taking is immaterial, but that statutes apparently constitutional may, under the form of a constitutional regulation of rates, be held by their unreasonableness and injustice, as applied, to be in effect an unconstitutional taking of private property. *Reagan* v. *Trust Co.,* 154 U. S. 362; *Mercantile Trust Co.* v. *Texas &c. Co.,* 51 Fed. Rep. 529; *Ames* v. *Union Pacific Ry. Co.,* 64 Fed. Rep. 165; *Southern Pacific Co.* v. *Board of Railroad Comrs.,* 78 Fed. Rep. 236; *Railway Co.* v. *Dey,* 35 Fed. Rep. 866; *Capital City Gas Light Co.* v. *Des Moines,* 72 Fed. Rep. 849; *Cotting* v. *Kansas City &c. Co.,* 79 Fed. Rep. 679.

A sale which is compulsory in law under a state statute is the equivalent of a taking by the State. *Parks* v. *Boston,* 15 Pick. 198, 208; *Norcross* v. *Cambridge,* 166 Massachusetts, 508, 511.

While ordinarily what may be lawfully done may be lawfully threatened, yet if the government, or an officer of the government acting under color of office, threatens an individual with serious loss, unless the individual will make a contract to do something not required by law,—different from that required by law,—and if the contract is made under the influence of such threat, such contract, though voluntary in appearance, becomes thereby compulsory in fact and in law, and is obtained by duress. *Hamilton Gas Co.* v. *Hamilton,* 146 U. S. 258; *Silsbee* v. *Webber,* 171 Massachusetts, 381, and cases cited; *Thayer* v. *Jaques,* 106 Massachusetts, 291; *United States* v. *Tingey,* 5 Pet. 115, 129, and for subsequent cases in which this case has been cited, see 3 Rose's Notes, 161; *Maxwell* v. *Griswold,* 10 How. 242; *Swift Co.* v. *United States,* 111 U. S. 22, 28; *Robertson* v. *Frank Brothers Co.,* 132 U. S. 17; *Boston* v. *Capen,* 7 Cush. 116, 124.

The State by the act of 1894 in effect threatened the plaintiff with serious loss unless the plaintiff would, by an apparently voluntary sale and contract, do something not required by law.

The result of competition by the city without purchasing its property must necessarily have caused the ruin of the Water Company. This has been judicially noticed in *Walla Walla Water Case,* 172 U. S. 1, 11; *Gloucester Water Supply Co.* v. *Gloucester,* 179 Massachusetts, 365; *White* v. *City of Meadville,* 177 Pa. St. 651; *Westerly Water Works* v. *Westerly,* 75 Fed. Rep. 181; *Ziegler* v. *Chapin, Mayor, etc.,* 126 N. Y. 342.

The rights of the company were franchises and were thus the property of the Water Company. *Boston &c.* v. *Salem &c.,* 2 Gray, 35, and cases cited; *Williston Seminary* v. *County Commissioners,* 147 Massachusetts, 430; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 327.

No compensation was made or secured by the statute to the Water Company for a valuable part of the property included in the sale, viz., the right to the use of the streets and to collect water rates.

Duress may be caused by a declaration of a probable or a certain evil to come, giving to the party threatened a choice of evils. A submission "merely as a choice of evils" does not destroy the involuntary character of the act. *Robertson* v. *Frank Brothers Co.,* 132 U. S. 17, 22. And the sale thereby became a compulsory one.

That the company gave a deed which was voluntary in form is immaterial. The sale remains compulsory in fact and in law. *Baker* v. *Morton,* 12 Wall. 150; *Swift Co.* v. *United States,* 111 U. S. 22; *Robertson* v. *Frank Bros. Co.,* 132 U. S. 17; *Long Isld. Water Supply Co.* v. *Brooklyn,* 166 U. S. 689; *Missouri Pac. Ry.* v. *Nebraska,* 164 U. S. 403, 417.

That a "taking" for public use under a statute is the equivalent of a "compulsory purchase" has been distinctly held in the following Massachusetts decisions. *Parks* v. *Boston,* 15 Pick. 198, 208; *Norcross* v. *Cambridge,* 166 Massachusetts, 508, 511, 512. See also *Thompson* v. *Androscoggin &c. Co.,* 54 N. H. 545; Lewis on Eminent Domain, 48, 55.

The effect of the right of *eminent domain* against the individual "amounts to nothing more than a power to oblige him to sell and convey when the public necessities require it." Cooley's Const. Lim. 6th ed. 691, citing *Fletcher* v. *Peck,* 6 Cranch, 87, 145; *Bradshaw* v. *Rogers,* 20 Johns. 103; *People* v. *Mayor,* 4 N. Y. 419; *Carson* v. *Coleman,* 11 N. J. Eq. 106; *Young* v. *Harrison,* 6 Georgia, 130; *United States* v. *Minnesota &c. R. R. Co.,* 1 Minnesota, 127; *Railroad Co.* v. *Ferris,* 26 Texas, 588; *Curran* v. *Shattuck,* 24 California, 427; *State* v. *Graves,* 19 Maryland, 351; *Weckler* v. *Chicago,* 61 Illinois, 142, 147.

The legislation, as construed and applied, impaired the obligation of contracts belonging to said company and to the stockholders, in violation of sec. 10, art. I, of the Constitution of the United States, and the plaintiff's rights thereunder.

*Mr. Albert E. Pillsbury,* with whom *Mr. George H. O'Connell*

and *Mr. Charles A. Russell* were on the brief, for appellee in this case and appellee in No. 183.

As to jurisdiction: The bill does not present a case arising under the Constitution or laws of the United States. *Cooke* v. *Avery*, 147 U. S. 375, 385; *Starin* v. *New York*, 115 U. S. 248, 257.

The case is within the rule that the repugnancy of a state statute or proceeding to the Federal Constitution is to be passed upon by the state courts in the first instance, the presumption being in all cases that they will do what the Constitution and laws of the United States require; and, if there be ground for complaint of their decision, the remedy is by writ of error under section 709 of the Revised Statutes. *New Orleans* v. *Benjamin*, 153 U. S. 411, 424; *McCain* v. *Des Moines*, 174 U. S. 168, 181; *Bienville Water Supply Co.* v. *Mobile*, 175 U. S. 109; *Defiance Water Co.* v. *Defiance*, 191 U. S. 184, and cases cited; *Owensboro* v. *Owensboro Water Co.*, 191 U. S. 358; *Arbuckle* v. *Blackburn*, 191 U. S. 405, 413.

The principle of estoppel exists and is applicable. One who takes the benefit of a statute is held thereby to have waived any right to thereafter attack it as unconstitutional or otherwise invalid. The present case is directly within this rule; accordingly, the bill presents no Federal question of jurisdiction. *Electric Co.* v. *Dow*, 166 U. S. 489.

The company, by this bill, is taking advantage of its own laches and default in omitting to raise the Federal question in the state court, to secure a consideration of it by this court to which it would not have been entitled in the regular course of procedure. If not entitled to it there, it cannot be entitled to it here.

The principles of waiver and estoppel belong to general jurisprudence, and are of general application, alike in state and Federal courts. *City Railway Co.* v. *Citizens Railway Co.*, 166 U. S. 557, 568. The company, by its own petition, sought the act of 1894, which it now attempts to avoid after taking advantage of it. *Clay* v. *Smith*, 3 Pet. 411; *Chapman* v. *Forsyth*, 2

How. 202; *Daniels* v. *Tearney*, 102 U. S. 415, 421; *Gibbs* v. *Baltimore Gas Co.*, 130 U. S. 396, 408; *Cole* v. *Cunningham*, 133 U. S. 107, 115; *Ashley* v. *Ryan*, 153 U. S. 436, 441; *Pierce* v. *Somerset Railway*, 171 U. S. 641, 648; *Hale* v. *Lewis*, 181 U. S. 473, and cases cited; *O'Brien* v. *Wheelock*, 184 U. S. 450, 491.

For the law of Massachusetts upon the subject, see *Haskell* v. *New Bedford*, 108 Massachusetts, 208, 213; *Bancroft* v. *Cambridge*, 126 Massachusetts, 438, 442; *Eustis* v. *Bolles*, 146 Massachusetts, 413; *Braintree Water Co.* v. *Braintree*, 146 Massachusetts, 482, 486; *Rockport Water Co.* v. *Rockport*, 161 Massachusetts, 279; *Citizen's Gas Lt. Co.* v. *Wakefield*, 161 Massachusetts, 432, 439; *Hudson Elec. Light Co.* v. *Hudson*, 163 Massachusetts, 346, 348; *Rosenthal* v. *Coates*, 148 U. S. 142, 147; *Robb* v. *Vos*, 155 U. S. 13, 43; *Forsyth* v. *Hammond*, 166 U. S. 506, 517.

Appellant sought in the state court, and was given opportunity, to litigate the rights claimed by it; and it cannot complain that the guarantees of the Constitution of the United States were denied because the litigation did not result successfully. *Remington Paper Co.* v. *Watson*, 173 U. S. 443, 451; *Graham* v. *Boston H. & E. R. R.*, 118 U. S. 161, 177; *Manning* v. *Amy*, 140 U. S. 137, 141; *Wilson* v. *Lambert*, 168 U. S. 611, 618; *Mitchell* v. *First Nat. Bank*, 180 U. S. 471, 482; *Bienville Water Co.* v. *Mobile*, 186 U. S. 212, 216; *Connihan* v. *Thompson*, 111 Massachusetts, 270.

The Federal claim is simulated, for the purpose of getting a new trial. The suit "does not really and substantially involve a dispute or controversy properly within the jurisdiction of the Circuit Court," in the sense of Stat. of March 3, 1875, § 5, 18 Stat. 470; and the bill might have been dismissed below upon this ground. See cases cited *supra* and *New Orleans Water Works Co.* v. *Louisiana*, 185 U. S. 344, and cases cited.

As to taking of property:

The claim of duress cannot be taken seriously. The element of illegality is wholly wanting; the alleged "threats" ascribed to the legislature and the mayor were either lawful acts in

themselves, or no more than the indication of a purpose to do lawful. acts; the mayor's statements do not bind the city; and they disappear in the proof.

Nor, as already noted, would duress, if proved, establish a taking of the company's property, or present any Federal question. At most, it would only entitle the company to avoid its deed and have the property restored.

In addition to cases cited by the Circuit Court on duress or. "threats," see *French v. Shoemaker*, 14 Wall. 314, 332; *United States* v. *Huckabee*, 16 Wall. 414, 431; *Doyle v. Continental Ins. Co.*, 94 U. S. 535, 541; *Silliman* v. *United States*, 101 U. S. 465; *Carver* v. *United States*, 111 U. S. 609; *United States* v. *Des Moines Co.*, 142 U. S. 510, 544; *Lane & Bodley Co.* v. *Locke*, 150 U. S. 193, 200; *White* v. *United States*, 154 U. S. 661; *Thorne Wire Co.* v. *Washburn & Moen Co.*, 159 U. S. 423, 444; *Cable* v. *U. S. Life Ins. Co.*, 191 U. S. 288, 308; *Wilcox* v. *Howland*, 23 Pick. 167; *Emmons* v. *Scudder*, 115 Massachusetts, 367; *Vegelahn* v. *Guntner*, 167 Massachusetts, 92, 107.

The motives, reasons or state of mind of the stockholders in voting the sale are immaterial. They are bound by the act of the corporation, and their motives are not necessarily to be ascribed to the corporation. *Hawkins* v. *Glenn*, 131 U. S. 319; *Glenn* v. *Leggett*, 135 U. S. 533, 544; *Louisville Water Co.* v. *Clark*, 143 U. S. 1, 13; *Hendrickson* v. *Bradley*, 85 Fed. Rep. 508, 516, and cases cited.

The whole case centers in the single question whether a grant to a city, by a legislature having a reserved power to alter or repeal all corporate charters of authority to supply itself with water in competition with a local company operating under a non-exclusive franchise and contract, accompanied with the obligation to buy the company's property, if offered, without payment for its franchise rights, amounts to a *taking* of property held under such franchise; a question settled, in principle, ever since the *Charles River Bridge* case, and now repeatedly determined by decisions which directly cover the whole ground of the company's claim. Of the cases cited by

the Circuit Court, *Lehigh Water Co.* v. *Easton,* 121 U. S. 388, 390; *Stein* v. *Bienville Water Co.,* 141 U. S. 67, 81; *Hamilton Gas Co.* v. *Hamilton,* 146 U. S. 258, 268, and *Long Island Water Co.* v. *Brooklyn,* 166 U. S. 685, 696, are directly in point and are conclusive. The only question is of legislative power to authorize competition with a non-exclusive franchise. It is now settled even that an express stipulation in the contract that the city should not compete would have given the company no exclusive right as against the legislature. *Walla Walla Case,* 172 U. S. 1, 15, as cited in 180 U. S. at p. 618; *Browne* v. *Turner,* 176 Massachusetts, 9, 15; and that competition by the city is not excluded where competition by others is not excluded. *Joplin Case,* 191 U. S. 156.

In addition to cases cited by the Circuit Court on the main question of deprivation of property, see *Citizens St. Ry.* v. *Detroit Ry.,* 171 U. S. 48, 53; *Walla Walla Case,* 172 U. S. 1, 14, 15; *San Diego Co.* v. *National City,* 174 U. S. 739, 754; *Freeport Water Co.* v. *Freeport,* 180 U. S. 587; *Rogers Park Water Co.* v. *Fergus,* 180 U. S. 624; *Skaneateles Water Co.* v. *Skaneateles,* 184 U. S. 354; *Bienville Water Supply Co.* v. *Mobile,* 186 U. S. 212; *Knoxville Water Co.* v. *Knoxville,* 189 U. S. 434; *San Diego Land Co.* v. *Jasper,* 189 U. S. 439; *Joplin* v. *Southwest Mo. Lt. Co.,* 191 U. S. 150; *Owensboro* v. *Owensboro Water Co.,* 191 U. S. 358; *Stanislaus County* v. *San Joaquin Canal Co.,* 192 U. S. 201; *Kennebec Water Dist.* v. *Waterville,* 97 Maine, 185, 206; *Newburyport Water Co.* v. *Newburyport,* 168 Massachusetts, 541; 553, 554; *Gloucester Water Supply Co.* v. *Gloucester,* 179 Massachusetts, 365, 382; *Syracuse Water Co.* v. *Syracuse,* 116 N. Y. 167.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

At the threshold we are met with the objection, raised below and urged at bar, that the Circuit Court was without jurisdiction, because the bill on its face did not state a case arising

under the Constitution or laws of the United States, within the intendment of the act of August 13, 1888. 25 Stat. 433. As the case is here on direct appeal from the decree of the Circuit Court of the United States, the solution of this question necessarily involves also deciding whether the cause was properly brought to this court. As the existence of the constitutional question is the only basis of the right to the direct appeal, if there was no such question in the court below there was and is no such issue by which the direct appeal to this court can be sustained. Under these circumstances, if the contention as to want of jurisdiction of the court below, arising from the alleged absence of constitutional questions, be well founded, our duty is not simply to dismiss the appeal, but to reverse the decree below with instructions to the Circuit Court to dismiss the bill for want of jurisdiction. *Defiance Water Company* v. *Defiance*, 191 U. S. 184.

If jurisdiction is to be determined by the mere fact that the bill alleged constitutional questions, there was, of course, jurisdiction. But that is not the sole criterion. On the contrary, it is settled that jurisdiction does not arise simply because an averment is made as to the existence of a constitutional question, if it plainly appears that such averment is not real and substantial, but is without color of merit. *Underground Railroad.* v. *City of New York*, 193 U. S. 416; *Arbuckle* v. *Blackburn*, 191 U. S. 405; *Owensboro* v. *Owensboro Waterworks Co.*, 191 U. S. 358; *Defiance Water Co.* v. *Defiance*, 191 U. S. 184; *Swafford* v. *Templeton*, 185 U. S. 487; *McCain* v. *Des Moines*, 174. U. S. 168, 181, and cases cited. Whether the Constitution of the United States was and is, in a real and substantial sense, involved depends upon apparently two considerations: First, the proposition that the sale made by the company to the city was compulsory, and hence there was a taking of the property in disregard of due process of law; and, second, that the failure of the commissioners to value the future profits arising from the contract for the furnishing for fires of a water supply to the city impaired the obligations of the company's contract. We

say apparently two, since the questions are virtually one, depending both on the same considerations.

Now, it is conceded that the charter of the water company was not exclusive, and was subject to repeal, alteration or amendment at the will of the legislature. This being the case, it is evident that no deprivation of property without due process of law or impairment of the obligations of a contract did or could arise from the act of the legislature empowering the city to erect its own waterworks. Having this power, the legislature could therefore have exercised it without compelling the city to buy the plant of the water company, and the bill proceeds upon the theory that if this right had been exerted by the legislature the company would have been ruined, and the value of its property in effect entirely destroyed. This follows, because the averments are based upon the assumption that the conveyance by the company of its property to the city was not voluntary, since, if it had not so conveyed, the exercise by the city of the right to construct its own plant would have destroyed the company's property. The contentions, therefore, as to the Constitution of the United States are based solely upon the proposition that because the legislature sought to protect the company and save its property from ruin by conferring upon it the privilege of selling its property to the city, if it chose to do so, thereby compulsion and consequent violation of the Constitution of the United States arose. In other words, that because there was conferred a benefit upon the corporation, which the legislature need not have bestowed, and which the company availed of, that its property was taken from it forcibly and without its consent. When the contention is thus reduced to its ultimate analysis, it comes to this—that the property of the company was taken from it without its consent, because by the action of the legislature, for the benefit of the company, it was enabled to sell its plant to the city and thus escape a serious loss. Indeed, in reason, the theory upon which the bill is based could not be maintained without deciding that the company had an exclusive contract, and there-

fore that there was a want of power in the legislature to authorize the city to erect its own plant; or, what is tantamount thereto, declaring that, although there was no exclusive right and therefore power in the legislature, to give the city the right to erect its own plant, that body must have abstained from the exercise of its lawful authority, unless it determined to exert it so as to destroy and ruin the company. The power being in the legislature, it was competent for that body to exert it for the benefit and in the interest of the water company, to enable that company, if it chose to sell its plant upon the terms stipulated, and thus avoid the loss which otherwise, the bill avers, would have been entailed. And these considerations take this case out of the reach of the authorities which are relied upon as establishing that one cannot enforce a contract benefit derived from or advantage gained over another, by coercing his will by means of threats, even of the doing of a lawful act. The advantage resulting from the power conferred upon the company to sell enured to its benefit, since it saved it from a ruin which otherwise would have been occasioned. No compulsion in any legal sense can be said to have been exerted on the company by the option given it, because the exercise by the company of the option, upon its own theory of the case, saved its property from destruction. To indulge in the assumption that the action of the company was not voluntary would require the assumption that the company would have willingly suffered a most grievous wrong when, by accepting as it did the benefits of the act, such consequences were averted. The Supreme Judicial Court of Massachusetts, in passing upon the award made by the commissioners, aptly said (168 Massachusetts, 554):

"It must be remembered that the transaction before us springs out of a voluntary offer by the petitioner to sell upon the statutory terms, and therefore there is no reason to try to bend those terms in its favor. Of course, an offer by a water company made under the threat of municipal competition and to avoid ruin, might be voluntary only in name. But we have

no reason to assume in this case that the petitioner is the victim of robbery, and must treat it as having acted oi its free choice in fact as well as in form."

It is to be observed that in the legislative act which the company accepted, and in furtherance of which it voluntarily conveyed its property to the city, it was expressly stipulated that the value of such property "should be estimated without enhancement on account of future earning capacity or good will, or on account of the franchise of said company." It is also worthy of note that before the state courts the only question presented for consideration was the proper interpretation of the statute in question, and whether or not it provided for payment for certain incorporeal rights and franchises which the water company contended should have been allowed for by the commissioners. Having accepted the statute, conveyed its property to the city, provoked the state proceedings to value the property and derived the benefits resulting from the legislation of the State of Massachusetts, the water company may not now, because of disappointment at the result of the interpretation which the statute received at the hands of the state court, change its position and cause its voluntary acceptance to become an involuntary one in order to assail the constitutionality of the legislation in question.

Concluding, for the foregoing reasons, that the rights asserted in the bill under the Constitution of the United States, upon which the jurisdiction of this court depends and upon which also the jurisdiction of the lower court depended, were so attenuated and unsubstantial as to be absolutely devoid of merit, our duty is to direct that the decree of the Circuit Court be reversed at appellant's costs, and that the case be remanded to that court with instructions to dismiss the bill for want of jurisdiction.

*And it is so ordered.*