**Naomi RUFFIN and Doris Bellamy**

**v.**

**Frank S. BEAL, Individually and as Secretary of the Department of Public Welfare, Commonwealth of Pennsylvania, et al.**

**Civ. A. No. 77–185.**

United States District Court,
E. D. Pennsylvania,
Civil Division.

May 10, 1978.

---

Bartholomew E. Poindexter, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Linda M. Gunn, Dept. of Public Welfare, Harrisburg, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This matter is before the Court on cross-motions for summary judgment. For the reasons hereinafter stated the plaintiffs' motion will be denied and the defendants' motion will be granted.

The basic facts are undisputed and are as follows:

Naomi Ruffin and Doris Bellamy are residents of Philadelphia County of the Commonwealth of Pennsylvania. Both are eligible for and receive benefits for themselves and their children under the Aid to Families with Dependent Children (AFDC) Program. Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.* In addition, Naomi Ruffin receives $129.00 a month in support payments. Also Doris Bellamy receives Supplemental Security Income benefits for her daughter, Tina, who suffers from a physical disability.

The AFDC Program in the Commonwealth of Pennsylvania is administered by the Pennsylvania Department of Public Welfare (DPW). Defendant Frank S. Beal is the Secretary of DPW and is responsible under the Public Welfare Code, 62 P.S. § 401 *et seq.*, for establishing and administering policies, rules, regulations and standards concerning the AFDC Program in the Commonwealth of Pennsylvania, including the administration of hearing procedures.

On August 19, 1976, Naomi Ruffin was required to enter Episcopal Hospital for surgery. Her doctor had estimated a hospital stay of five days. Because Ms. Ruffin had no relatives to care for her eight children while she would be hospitalized, she requested assistance from DPW, through defendant C. Canino, Income Maintenance Worker II, with the Philadelphia County Board of Assistance.

Ms. Canino initially informed Ms. Ruffin that she would receive a child care allowance for the time that Ms. Ruffin was hospitalized and for the period of her at-home recovery. Later Ms. Canino offered Ms. Ruffin the choice of either a homemaker supplied by DPW or DPW's payment to a third party whom Ms. Ruffin could choose.

Relying on the information provided by DPW, Ms. Ruffin hired a neighbor, Alice Dent, to care for her eight children while she was incapacitated. The agreed compensation was to be $15/day. Ms. Dent provided Ms. Ruffin with necessary child care for 10 days, and thereby became entitled to $150.00 for her services.

When Ms. Ruffin had recovered and informed DPW of the arrangement with Ms. Dent, she was then informed that DPW would not provide payment for Ms. Dent. It was at this time that Ms. Ruffin was informed that homemaker service should have been requested for her by defendant Canino.

Similarly, Doris Bellamy was scheduled to enter the hospital on August 28, 1976 for necessary surgery. On August 24, 1976 she requested aid from DPW to care for her children while she was hospitalized.

Plaintiff Bellamy told DPW that because of her daughter Tina's disability, twenty-four hour care would be necessary. Ms. Bellamy did not have any relative who could care for her family. DPW did not refer Ms. Bellamy to the District Office's homemaker. DPW also did not inform Ms. Bellamy of her right to such service and failed to utilize procedures set out in DPW regulations. Pa. Manual Section § 3710, Appendix VI provides for homemaker services when a parent is hospitalized.

Having to enter the hospital before hearing from DPW, Ms. Bellamy arranged with Ms. Woods, (a neighbor with a daughter who has a disability similar to Tina's), to care for Tina and Ms. Bellamy's four other children. Ms. Woods took care of Ms. Bellamy's children during her nine days in the hospital and charged $200.00 for her services.

When Ms. Bellamy requested reimbursement for Ms. Woods' homemaker services from DPW, she was denied.

Administrative hearings were requested and provided to plaintiffs. The procedures used in these separate hearings are not challenged in this lawsuit. In each case, the hearing examiner, defendant Farley, found that DPW had committed an administrative error in failing to provide the appropriate services which were available under existing DPW regulations. Yet, since those regulations do not authorize monetary payments for such services, Farley held that he was without authority to issue corrective grants.[1] He suggested that by appeal to Commonwealth Court, these regulations could be challenged.

Plaintiffs then filed this civil rights action claiming that defendant Farley's failure to grant corrective payments deprived plaintiffs of their right to a meaningful hearing, in violation of the due process clause of the Fourteenth Amendment (and 42 U.S.C. § 1983). Plaintiffs also allege that defendants' policy and practice as outlined above conflicts with a binding federal regulation for the AFDC program, 45 C.F.R. § 205.10(a)(18) (1975), and therefore violates the Supremacy Clause of the United States Constitution. In addition, plaintiffs allege a pendent state law tort claim against defendant Canino for negligent misrepresentation.

## I. JURISDICTION

### A. JURISDICTION OVER PLAINTIFFS' STATUTORY AND REGULATORY CLAIMS

■ The Civil Rights Act, 42 U.S.C. § 1983, provides for a cause of action for an individual who, under color of state law, has been deprived of any rights, privileges or immunities secured by the Constitution and laws. This provision in itself is clearly not jurisdictional. *Hagans v. Lavine*, 415 U.S. 528, 535, 94 S.Ct. 1372, 39 L.Ed.2d 577

(1974); *Lynch v. Household Finance Corp.*, 405 U.S. 538, 540, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Plaintiffs, therefore, rely upon 28 U.S.C. § 1343(3) and (4). These jurisdictional provisions are, however, narrower in scope than 42 U.S.C. § 1983. *See Gonzalez v. Young*, 560 F.2d 160 (3rd Cir. 1977). Assertion of a claim under § 1983 does not automatically invoke the jurisdiction of this Court.

While 42 U.S.C. § 1983 provides redress or a cause of action for deprivation, under color of state law, for "any rights, privileges, or immunities secured by the Constitution and laws," 28 U.S.C. § 1343(3) gives Federal District Courts jurisdiction only in those cases brought "[t]o redress the deprivation, under color of any State law . . . of any right . . . secured by the *Constitution of the United States* or by any Act of Congress *providing for equal rights of citizens . . . .*" (emphasis added)

■ Plaintiffs' allegation that agency action in the instant case conflicts with the Social Security Act and Federal regulations promulgated thereunder raises a Supremacy Clause question. Allegations of statutory conflicts under the Supremacy Clause are insufficient to support federal jurisdiction under § 1343(3). *Gonzalez, supra. Andrews v. Maher*, 525 F.2d 113 (2nd Cir. 1975). In *Andrews* the Court said "[t]he Supremacy Clause does not secure rights to individuals; it states a fundamental structural principle of federalism." *Id.* at 118–119. The Third Circuit in *Gonzalez, supra*, cited this language with approval in concluding that "jurisdiction must rest on a constitutional claim of sufficient substance, independent of statutory conflicts under the Supremacy Clause." *Id.* at 166 (3rd Cir. 1977). *But see Blue v. Craig*, 505 F.2d 830 (4th Cir. 1974). In *Gonzalez, supra*, the Court rejected the suggestion that the Social Security Act was the type of law for which Federal jurisdiction was granted by virtue of 28 U.S.C. § 1343(4). The Court stated:

fendants who administer various aspects of DPW's programs are not alleged to have been personally involved in the challenged conduct.

---

1. Defendants Beal, who is Secretary of DPW, Roth, who is responsible for hearings and appeals procedures for DPW, and the other de-

"Nor do we believe that the Social Security Act is one 'providing for the protection of civil rights,' as to bring this action under section 1343(4) . . . Again we make reference to the actions of Congress in enacting the jurisdictional grant. Section 1343(4) was intended to ensure jurisdiction over claims based upon the Civil Rights Act of 1957. *See* H.R.Rep. No.85–291, 1957 U.S.Code Cong. & Admin.News 1966, 1976 (1957). The Social Security Act, which protects the rights Gonzalez asserts here, is of a decidedly dissimilar purpose." *Id.* at 167.

Therefore, no independent Federal jurisdiction exists over plaintiff's statutory and regulatory claims by virtue of 28 U.S.C. § 1343(3) or (4).

## B. *PENDENT JURISDICTION OVER PLAINTIFFS' FEDERAL STATUTORY AND REGULATORY CLAIMS*

■ Just as no independent jurisdiction exists, plaintiffs' claims of a violation of due process do not raise a substantial Federal Constitutional question necessary to confer pendent jurisdiction over plaintiffs' statutory or regulatory claims.

Unlike the plaintiff in *Gonzalez, supra,* who alleged only statutory conflicts between State law and the Social Security Act, plaintiffs here assert a denial of due process. The determination must be made as to whether or not this presents a substantial Federal Constitutional question.

The question of what is a substantial federal question has been addressed by the Supreme Court on many occasions. *See Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 24 S.Ct. 553, 48 L.Ed. 795 (1904); *Ex parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). Constitutional insubstantiality for jurisdictional purposes has been equated with the lack of a substantial federal question. Phrases

such as "essentially fictitious," "wholly insubstantial," "obviously frivolous" and "obviously without merit" have been established as the test for jurisdiction. *See Hagans v. Levine, supra,* 415 U.S. at 537, 94 S.Ct. 1372.

In substance, plaintiffs allege a due process violation because, following notice and an opportunity for a hearing, they did not obtain the relief they sought. Plaintiffs fault neither the procedures at the hearing nor the regulation on which their claims were denied. There is no allegation of the unconstitutionality of any State law or regulations. At best plaintiffs allege an error of law on the part of the hearing examiner. Such circumstances raise no substantial federal question, *Powell v. Workmen's Compensation Board of the State of New York,* 327 F.2d 131, 138 (2nd Cir. 1964).

■ Underlying plaintiffs' claims, of course, is their allegation of administrative error. Specifically plaintiffs' claim misinformation supplied by their caseworkers and allege subsequent reliance by them on that information to their detriment. Misinformation, even if shown to exist in the context of this case, does not rise to the level of a denial of due process of constitutional dimensions. If errors were committed, the proper forum for rectifying them is the state court. *Powell, supra* at 138.[2] "As a general rule, federal courts are reluctant to use the federal civil rights statutes as a basis for interfering in state court proceedings . . . ." *Coltharp v. Cutler,* 419 F.Supp. 924, 928 (D.Utah 1976). As Justice Frankfurter stated, "The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state." *Snowden v. Hughes,* 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed. 497 (1944) (Frankfurter, J., concurring) *quoted in Sanno v. Preiser,* 397 F.Supp. 560, 562 (S.D.N.Y. 1975).

---

2. This avenue for relief was suggested by the hearing examiner in his report.

Cf., *Jemzura v. Belden,* 281 F.Supp. 200 (N.D. N.Y.1968); *Palmigiano v. Mullen,* 491 F.2d 978 (1st Cir. 1974).

I conclude that the constitutional violation alleged in this case is not of sufficient substance to confer subject matter jurisdiction upon this court.

## II. CAUSE OF ACTION

■ But even assuming the court has jurisdiction under 28 U.S.C. § 1343(3) and (4) to hear plaintiffs' claim, the case must be dismissed for failure to state a cause of action.

Ruffin and Bellamy assert two claims: (1) a policy and practice of defendants contrary to the Social Security Act, specifically, 42 U.S.C. § 603(a)(4) and federal regulation 45 C.F.R. § 205.10(a)(18), and (2) a due process violation in not being granted relief following the Department's fair hearings in the instant matter. Plaintiff Ruffin asserts an additional claim of common-law tort, founded on the breach of an asserted legal duty on the part of her caseworker.

■ A review of these claims, however, shows that plaintiffs assert no deprivation of any rights, privileges or immunities secured by the Constitution or laws. Such an assertion is prerequisite to recovery under 42 U.S.C. § 1983. *Rice v. Sioux City Memorial Park Cemetery, Inc.*, 349 U.S. 70, 75 S.Ct. 614, 99 L.Ed. 897 (1955); *Egan v. City of Aurora*, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961).

### A. *STATUTORY AND REGULATORY CLAIMS*

■ Paragraph 36 of plaintiffs' Complaint alleges a violation of the Social Security Act, specifically 42 U.S.C. § 603(a)(4). Clearly no federally protected right of plaintiffs exists under this section which was repealed ten years ago by Pub.L. 90–248, Title II, § 201(e)(3), January 2, 1968, 81 Stat. 880.[3]

---

3. It is possible that plaintiffs had in mind 42 U.S.C. § 602(a)(4) which provides:

"(a) A State Plan for aid and services to needy families with children must . . . (4) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families

■ Plaintiffs also assert that Federal regulation 45 C.F.R. § 205.10(a)(18), promulgated by HEW pursuant to Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.*, provides them a right to corrective relief in cases of administrative error. This is incorrect. Specifically the regulation provides:

"When the hearing *decision is favorable to the claimant*, or when the agency decides in favor of the claimant prior to the hearing, the agency shall promptly make corrective payments retroactively to the date the incorrect action was taken." 45 C.F.R. § 205.10(a)(18). (emphasis added)

Clearly there is no requirement in this regulation that any payments be made to a claimant when the hearing decision is not favorable to the claimant. In the instant case, the Hearing Examiner did not render decisions favorable to the plaintiffs. Even if, as plaintiffs by inference assert, the hearing decisions were wrong, the decisions were not, in fact, favorable to plaintiffs. Thus, no matter what right arises by virtue of federal regulation 45 C.F.R. § 205.-10(a)(18), the regulation relied upon is inapplicable in the instant case.

### B. *DUE PROCESS CLAIM*

Plaintiffs allege constitutional violation of due process because, they claim, they were by virtue of agency practices, denied an effective remedy at their fair hearing and thus, their fair hearings were meaningless.

■ The due process claims are, of course, founded upon an identifiable property or liberty interest. Even a "grievous loss" is insufficient, unless it implicates a protected interest. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Until that protected interest is identified the issue of "what process is due"

---

with dependent children is denied or is not acted upon with reasonable promptness;" This is conjecture, however, since the fact of the repeal of 42 U.S.C. § 603(a)(4) was pointed out in Defendants' answer over nine months ago (Answer, paragraph 18), and plaintiffs have not amended their Complaint.

is irrelevant. *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). The Supreme Court has held that a person's interest in a governmental benefit is a protected property interest if the claim of entitlement to the benefit is supported by the rules of the agency affording the benefit, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), or, at a bare minimum, by mutually explicit understandings. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). As the Court stated in *Roth* :

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

408 U.S. at 577, 92 S.Ct. at 2709.

■ The benefit here being claimed is payment for child care costs while plaintiffs were hospitalized. No rule or regulation of the Department of Public Welfare or HEW provides for the payment of such costs in plaintiffs' situation. There can be no entitlement to a non-existent benefit.

Public Assistance Manual § 3710, Appendix VI (Plaintiffs' Complaint, Exhibit II) certainly does not authorize payment for child care services, but only provides for direct provision of such services. Similarly, the Commonwealth's Comprehensive Annual Social Services Plan (CASSP) [4], 7 Pa.Bull. 1681 at p. 1720, July 18, 1977, specifies that such services are provided either directly by the County Assistance Office or under contract. A review of the Commonwealth's CASSP reveals that only direct services are provided to clients. There is no provision anywhere in the CASSP for reimbursement for services secured by the client from a third party. Direct payment to a client for child care expenses is, under department regulations, made only when such expenses are incurred due to the individual's enrollment in a work or training program that is part of the Department's need to decrease

the need for assistance. Formerly Manual § 3210 *et seq.* (Exhibit II), now PAEM § 175.23(c)(3). Further, such payments are made pursuant to Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.*, not pursuant to Title XX of that Act, 42 U.S.C. § 1397 *et seq.*

■ Plaintiffs' asserted reliance on allegedly incorrect information or lack of information supplied by their caseworkers certainly cannot result in the creation of an entitlement where none existed before.

### C. *TORT CLAIM*

Plaintiff Ruffin alleges that Defendant Canino misinformed plaintiff of the services available and that plaintiff was thus harmed by her detrimental reliance. This allegation, at best suggests possible negligence on the part of defendant Canino.

■ But tortious conduct in itself, is not sufficient to state a cause of action under Section 1983. The fact that a tort may have been committed by state officials does not mean that a federal right has been invaded. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 1159–1160, 47 L.Ed.2d 405 (1976); *Smith v. Spina*, 477 F.2d 1140 (3rd Cir. 1973); *Kent v. Prasse*, 385 F.2d 406 (3rd Cir. 1967); *Roach v. Kligman*, 412 F.Supp. 521 (E.D.Pa.1976).

■ Any tort claim arising from the facts of this case is solely a state law claim and since there is no independent basis for the exercise of federal jurisdiction, I will not accept jurisdiction over the state tort claim. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), *Roach v. Kligman, supra*, 528.

### D. *PLAINTIFFS FAILED TO ALLEGE THAT DEFENDANTS BEAL, HOOKER, ROTH AND STOVALL PLAYED AN AFFIRMATIVE PART IN DEPRIVING PLAINTIFFS OF THEIR CIVIL RIGHTS*

Plaintiffs' Complaint is devoid of any allegation or inference that defendants Beal,

---

4. This plan is a requirement for Federal Financial Participation in state expenditures for services under Title XX of the Social Security Act, 42 U.S.C. § 1397 *et seq.*

Hooker, Roth and Stovall played an affirmative part, acquiesced in or knew of the alleged violation of the civil rights of plaintiffs.

 In light of the above, it is clear, and the cases have held, that the doctrine of *respondeat superior* has no place in an action under § 1983, particularly where plaintiff seeks to hold a superior liable for monetary damages. As succinctly noted by *Judge Green in Downs v. Department of Public Welfare*, 368 F.Supp. 454, 463–64 (1973):

> "[I]t is clear that personal involvement is a necessary element of a § 1983 action and that a superior official is not held liable for the acts of his subordinates merely on the basis of that relationship. '[A] civil rights complaint must portray specific conduct by state officials which violates some constitutional right of the complainant in order to state a claim for relief.' (*Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3 Cir. 1970)."

Cases holding the principle of *respondeat superior* inapplicable in civil rights actions for monetary damages are legion. E. g., *Conner v. Jeffes*, 67 F.R.D. 86, 90–91 (M.D. Pa.1975); *Fleenor v. Adams*, 390 F.Supp. 258, 259 (E.D.Tenn.1974); *Ammlung v. Chester*, 355 F.Supp. 1300, 1306 (E.D.Pa. 1973), *aff'd on other grounds*, 494 F.2d 811 (3rd Cir. 1974); *Fisher v. Volz*, 496 F.2d 333, 349 (3rd Cir. 1974) (doctrine of *respondeat superior* inapplicable with respect to claims for punitive damages).

Thus, insofar as plaintiffs seek to hold each of these defendants vicariously liable under the doctrine of *respondeat superior* for any alleged misconduct, plaintiffs have failed to state a claim upon which relief can be granted.

### III. THE ELEVENTH AMENDMENT DEFENSE

In light of the disposition noted above, it will not be necessary to rule upon defendants' claim that the Eleventh Amendment bars recovery of money damages against Commonwealth of Pennsylvania officials sued in their official capacity.

### ORDER

AND NOW, this 10th day of May, 1978, upon consideration of the cross-motions for summary judgment, it is hereby

ORDERED that plaintiffs' motion for summary judgment be DENIED and it is further

ORDERED that defendants' motion for summary judgment be and the same is hereby GRANTED.