**Dennis O'CONNOR, Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

**and**

**U.S. Drug Enforcement Administration, Defendant.**

**Civ. A. No. PJM 94–1341.**

United States District Court, D. Maryland.

*Nov. 29, 1994.*

Dennis O'Connor, pro se.

Roann Nichols, U.S. Attorney's Office, Baltimore, MD, for defendants.

*OPINION*

MESSITTE, District Judge.

### I.

Plaintiff Dennis O'Connor, an attorney acting pro se, has petitioned for injunctive and equitable relief "regarding extraordinary, unreasonable searches and seizures, as well as stalking and harassment activities, conducted against [him] by the United States Drug Enforcement Administration (DEA)." The United States has moved to dismiss the Complaint, *in alia,* for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) on the grounds that it is "so attenuated and unsubstantial as to be absolutely devoid of merit."

The Court will grant Defendants' Motion to Dismiss.

### II.

In a Complaint notable for the lucidity of its prose, Plaintiff sets out some extraordinary allegations.

He has been under "the most intensive possible surveillance for a period of several years ... For more than a year and a half, [he] has been subjected to harassment on a daily basis."

Among the "unusual techniques employed by the DEA" is "the use of a large number of civilian proxies, organized and directed by the DEA, who are employed to surround the target, to act as anonymous messengers, and

to be actors in scenes staged around the target, in this case the Plaintiff."

Plaintiff goes on to aver that the computer on which his pleading was typed is electrically monitored by DEA, his telephone is tapped, and his home, including every bedroom and bathroom, wired and under video surveillance. Plaintiff's cars have allegedly been wired for surveillance and for tracking purposes. His law office is said to have been under electronic surveillance and his office phone and computer were similarly monitored. Plaintiff states that it is probable that his former office was also under such surveillance. In addition to surveillance of his home, office, and vehicles, Plaintiff alleges that he has been the subject of surveillance at his parents' home in Pennsylvania, his mother-in-law's home in Pennsylvania, his mother's home in Florida, and his sister's home in Massachusetts.

He has even, he avers, been subjected to electronic surveillance while in the District of Columbia Superior Court including while in the Lawyer's Lounge there.

DEA has purportedly tampered with Plaintiff's possessions, leaving intentional clues of that tampering as part of a program to harass and intimidate him. It has also stalked him by recruiting a large number of civilians who walk by or near him, "speaking prepared dialogue or displaying selected props." Among the "buzz words and stock phrases" used by the volunteers are such phrases as "no way," "can't win," "I know," "I'm telling you," and "I'll show you." Supposedly, "thousands" of individuals have been involved in this process. Plaintiff says he rarely goes into a store or restaurant, walks for a few blocks, or gets on the subway "without being imposed upon by the presence of several civilian volunteers chattering away with DEA-prepared dialogue."

Among the props allegedly used by DEA to harass Plaintiff are newspapers and magazines with "'meaningful' or suggestive headlines or print; book covers; clothing items with printed material; vehicles with slogans and/or meaningful license plates or bumper stickers." Among the license plates, for example, are those which have the letters "TNT," which Plaintiff says indicates is a message that he is "playing with dynamite." Headlines and printed bookcovers employed by DEA "proxies" include such titles as "Doomed to Die," "Vortex," and "Enough Already," all of which are said to be coded warnings to Plaintiff.

In addition to prepared dialogues, DEA purportedly has had its "proxies" make gestures or strike poses intended to harass Plaintiff. These include persons pointing down as they walk by Plaintiff or pointing up or hiding their hands behind their back, "as if in handcuffs."

In the 36–page affidavit in support of his 42–page Complaint, Plaintiff submits that another technique of DEA is to contact management of stores and restaurants that he frequents, which then play music over PA systems in an effort to control the environment around him and convince him that resistance is hopeless.

According to Plaintiff, the motive for these activities is that a neighbor of Plaintiff, a veteran DEA agent, has a vendetta against him. Plaintiff alleges he is writing a book about DEA in which he intends to expose its illicit activities and this in part accounts for his status as target.

Plaintiff says he has attempted to deal with this problem through legal means, having filed a complaint against DEA with the Department of Justice's Office of Professional Responsibility and having written to the Acting Administrator of the DEA pursuant to the requirements of the Federal Torts Claims Act.

Plaintiff's affidavit offers the following observation:

All of this may sound fantastic and paranoid, and that is undoubtedly how it has been designed to sound when recounted. The pressure has been applied anonymously and has been done with a built-in "plausible deniability" factor. Indeed, Affiant in this account has barely begun to scratch the surface of the scope of the operation.

In its brief Motion to Dismiss, the United States argues that the allegations in the Complaint are "so attenuated and unsubstantial as to be absolutely devoid of merit,"

justifying dismissal under Fed.R.Civ.P. 12(b)(1); that Plaintiff's allegations sound in tort and that the case should therefore be dismissed for failure to exhaust administrative remedies under the Federal Tort Claims Act; and that, to the extent Plaintiff alleges constitutional torts, the case should be dismissed since the Federal Tort Claims Act does not waive the government sovereign immunity for constitutional torts. Plaintiff replies to each of the Government's defenses, citing authorities, distinguishing cases, and arguing essentially that, at this stage, the Court must accept his well-pleaded allegations as true and that discovery should go forward.

### III.

The Court need only deal with the first of the Government's grounds for urging dismissal, *viz*, that the Court lacks subject matter jurisdiction over the complaint.

In *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the Supreme Court held that:

(a) patently insubstantial complaint may be dismissed, for example, for want of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See e.g.* *Hagans v. Lavine*, 415 U.S. 528, 536–537 [94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577] (1974) (federal courts lack power to entertain claims that are " 'so attenuated and unsubstantial as to be absolutely devoid of merit' ") (citation omitted); *Bell v. Hood*, 327 U.S. 678, 682–683 [66 S.Ct. 773, 776, 90 L.Ed. 939] (1946).

490 U.S. at 327, n. 6, 109 S.Ct. at 1832, n. 6.

■ As with *in forma pauperis* complaints reviewed under 28 U.S.C. § 1915(d), "patently insubstantial" complaints for Rule 12(b)(1) purposes include those that are based on "indisputably meritless legal theory" and those whose "factual contentions are clearly baseless," as well as "claims describing fantastic or delusional scenarios, claims with which federal judges are all too familiar." *Id.,* at 327–28, 109 S.Ct. at 1833.

■ The Court addresses these considerations on a preliminary basis, *Osborn v. United States*, 918 F.2d 724 (8th Cir.1990),

and is not, in marked contrast to practice under Rule 12(b)(6), restricted to the face of the pleadings but may review any appropriate evidence that bears on the issue. *See James W. Moore, et al., Moore's Federal Practice,* Par. 12.07(1) (2d ed. 1994).

■ Moreover, in contrast to Rule 12(b)(6) practice, when a court reviews a complaint under factual attack for lack of jurisdiction, no presumption of truthfulness applies to the factual allegations. *See Ohio National Life Insurance Company v. United States*, 922 F.2d 320 (6th Cir.1990). The burden of proof, as always, rests on the party asserting jurisdiction. *See e.g., Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir.1990). The court weighs the evidence in order to arrive at the factual predicate that subject matter jurisdiction does or does not exist.

■ As the finder of fact on a motion pursuant to Rule 12(b)(1), a court may take judicial notice of certain facts under Federal Rule of Evidence 201. It may, for instance, judicially notice "the world as it is and as it is known in common experience to be," *see Mitchell v. Board of Trustees*, 599 F.2d 582, 585 (4th Cir.1979), as well as what is "(n)ormal conduct and abnormal conduct." Cf. *State v. Conn*, 286 Md. 406, 407, 408 A.2d 700 (1979). In this case, the Court, with solicitude for Plaintiff, takes judicial notice of the fact that there are psychiatric conditions which cause individuals to exaggerate life situations, including ordinary conversations, slights and encounters, and interpret them in highly self-referential fashion. *Compare Best v. Kelly*, 39 F.3d 328, 330–31 (1994) ("Whatever may be said of plaintiffs' other claims, they are not 'essentially fictitious.' Plaintiffs have not suggested any bizarre conspiracy theories, any fantastic government manipulations of their will or mind, any sort of supernatural intervention. Theirs are not clearly fanciful claims, claims " 'so attenuated and unsubstantial as to be absolutely devoid of merit,' " *Hagans*, 415 U.S. at 535, 94 S.Ct. at 1378 (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904)), that

dismissal for lack of jurisdiction under Rule 12(b)(1) is warranted") (footnote omitted).

However lucid Plaintiff's prose may be, however cognizant Plaintiff may claim to be that his allegations only seem "fantastic and paranoid," his complaint in fact remains totally divorced from the real world, or in the language of the Supreme Court, "so attenuated and unsubstantial as to be absolutely devoid of merit." *Neitzke v. Williams*, 490 U.S. at 327, n. 6, 109 S.Ct. at 1832, n. 6.

Defendants' Motion to Dismiss will therefore be GRANTED without leave to amend.