**KEYSTONE COLLECTION SERVICE INC., Plaintiff,**

**v.**

**The Honorable Luis Silva RECIO, Secretary of the Department of Labor of the Commonwealth of Puerto Rico, et al., Defendant.**

**Civ. No. 74–716.**

United States District Court, D. Puerto Rico.

Jan. 23, 1975.

Frank Carbó, San Juan, P. R., and Victor J. Pagan, Rio Piedras, P. R., for plaintiff.

Rolando Silva and Alfredo Raffucci Carrion, Commonwealth of P. R. Dept. of Justice, for defendant.

## OPINION AND ORDER

TORRUELLA, District Judge.

On June 21, 1974 plaintiff, Keystone Collection Service, Inc., filed a complaint for injunctive relief pursuant to the provisions of 28 U.S.C.A. Secs. 2281 and 2284, and 42 U.S.C.A., Sec. 1983. In accordance with these provisions, plaintiff further requested that this Court convene a three judge court to consider the constitutionality of Commonwealth Law # 148 of June 30, 1969, appearing at 29 L.P.R.A., Section 501[1] et seq., commonly known as the "Christmas Bonus Law."[2]

Thereafter, on September 12, 1974, Plaintiff filed a motion amending the above complaint to include Hon. Luis Silva Recio, Secretary of the Department of Labor of the Commonwealth of Puerto Rico, as a defendant. Said amendment was allowed by this Court.

In essence, Plaintiff is alleging that the payment of the bonus provided for by said Law # 148 deprives him of his property without due process of law under the Fourteenth Amendment of the United States Constitution.

The issues presently before the Court have been narrowed down to determining whether the constitutional question presented is "substantial", as it is well settled that only if a "substantial" question is raised must a three judge court be convened. Swift & Co., v. Wickham, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). The parties agreed, and the Court concurs, that plaintiff has complied with all other necessary requirements to convening a three judge court. 28 U.S.C.A. § 2281 et seq. (See Gilhool v. Chairman, 306 F. Supp. 1202, C.D.C.Pa., 1969; Marín v. U. P. R., 346 F.Supp. 470 (C.D.C.P.R., 1972)).

The doctrine of "substantial federal question" has been defined by the Supreme Court on several occasions. Substantiality has been described as that which is not obviously frivolous, (Hannis Distilling v. Baltimore, 216 U.S. 285, 30 S.Ct. 326, 54 L.Ed. 482 (1910)), not wholly unsubstantial, (Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962)), is no longer open to discussion, (McGilvra v. Ross, 215 U.S. 70, 30 S.Ct. 27, 54 L.Ed. 95 (1909)), or is not so attenuated and unsubstantial as to be devoid of merit. (Newburyport v. Newburyport, 193 U.S. 561, 24 S.Ct. 553, 48 L.Ed. 795 (1904)).

In the case of Ex Parte Piresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), the Supreme Court expounded the theory which more clearly defined the above doctrine. The Court set forth that an issue is unsubstantial if:

" . . . 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and *leave no room for the inference that the question sought to be raised can be the subject of controversy.'* " (Emphasis added).

See also Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

The above doctrine was affirmed very recently by the Supreme Court in Ha-

---

1. This statute, supra, broadly provides that any employer who employs one or more employees during the period of twelve months comprised from October 1st to September 30, of any subsequent calendar year, shall pay said employee a bonus equivalent to 2% of the total wages, computed up to a maximum of ten thousand dollars, if said employee works 700 hours or more within the above period. The total amount paid by reason of said bonus is not to exceed 15% of the net annual profits of the employer.

2. There is in fact no reference in this statute to the bonus as being a "Christmas Bonus", which might raise other constitutional issues not presently pertinent.

gans v. Lavin, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Let us look at the statute in question within this framework of constitutional substantiality.

Law # 148 is one of several Commonwealth statutes approved by the Legislature for the benefit and well being of local employees and workers within the scope of what is generally known as "police power." Among such statutes are minimum wage laws, 29 L.P.R.A. § 245 et seq., workmen compensation laws, 11 L.P.R.A. § 1 et seq., labor relations law, 29 L.P.R.A. § 61 et seq., and laws regulating the hours of work, 29 L.P.R.A. § 271 et seq.

■■ It may be said that generally the police power of the State extends to all public needs. Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 42 L. Ed. 260 (1897). An ulterior public advantage may justify a comparatively insignificant taking of private property for what in its immediate purpose is a private use. Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112 (1911). Public safety, public health, morality, peace and quiet, law and order, are some of the more conspicuous examples of the traditional application of the police power to State affairs. However, they merely illustrate the scope of the power and do not delimit it. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

In *Berman*, supra, the Court addressed itself to defining the doctrine of police power. Appellant therein attacked the taking of his property in the District of Columbia pursuant to a redevelopment statute. The Court set forth, at page 32, 75 S.Ct. at page 102:

"We deal, in other words, with what traditionally has been known as the police power. An attempt to define its reach or trace its outer limits is fruitless, for each case must turn on its own facts. The definition is essentially the product of legislative determinations addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition. *Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation.*" (Emphasis added).

The Court again addressed itself to the same question in the case of Day-Bright Lighting, Inc. v. Missouri, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952), wherein it established, at page 423, 72 S.Ct. at page 407:

"But the state legislatures have constitutional authority to experiment with new techniques; *they are entitled to their own standard of the public welfare; they may within extremely broad limits control practices in the business-labor field,* so long as specific constitutional prohibitions are not violated and so long as conflicts with valid and controlling federal laws are avoided." (Emphasis added).

■■ The power of the Government to regulate activities permeated with an aura of public welfare is well settled and the cases are legion in which the Courts have upheld said power. Laws regulating areas such as labor relations, (see American Federation of Labor v. American Sash and Door Co. et al., 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222 (1949); N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937) minimum wages, (see West Coast Hotel Co. v. Parrish et al., 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); American Railroads Co. of P. R. v. Minimum Wage Board of Puerto Rico, 68 P. R.R. 736 (1948)), commercial and business affairs, (see Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); Lincoln Federal Labor Union et al. v. Northwestern Iron and Metal Co. et al., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949)), securities and antitrust, (see SEC v. Capital Gains Research Bureau, Inc. et al., 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); and physical environment (see Citizens to Preserve Overton Park Inc. et al.

v. Volpe, Secretary of Transportation et al., 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed. 2d 136 (1971)), have been found to be within the purview of the Constitution and part of the regulatory powers of the State or the Federal Government.

There is no doubt in our mind that a clear and unequivocal rule is recognizable in the above decisions to allow the State governments to regulate those areas in which public welfare is deemed affected. Law # 148 falls within such classification. It fits perfectly within the group of laws created with a social redeeming value and purpose. Its creation answers to local usage and was held by the prevailing and preponderant opinion of the Legislature of the Commonwealth of Puerto Rico to be necessary to the public welfare of said jurisdiction.

Based on the foregoing it is our opinion that the controversy arising out of this case creates no substantial federal question.

Wherefore, the instant complaint is dismissed for lack of jurisdiction of this Court and a three judge court is not convened for lack of a substantial constitutional question.

It is so ordered.