# 96 DTA 126

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL IV**

GENEROSO PEREZ TRUJILLO
Recurrido

v.

TREBOL MOTORS CORPORATION
Peticinario

------------------------------------

JOSE MANUEL MERCADO REYES
Recurrido

v.

TREBOL MOTORS CORPORATION
Peticionario

Núms. KLCE-95-01043/KLCE-96-00084

San Juan, Puerto Rico, a 30 de septiembre de 1996

Panel integrado por su presidenta, la Juez Alfonso de Cumpiano
y los Jueces Broco Oliveras y Miranda De Hostos

Broco Oliveras, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En los recursos de *certiorari* que hemos consolidado se cuestionan dos resoluciones del Tribunal de Primera Instancia, Sala Superior de San Juan, mediante las cuales fueron denegadas solicitudes de sentencia sumaria fundamentadas en la alegación de que los vendedores de automóviles no tienen derecho a horas extras al haber sido excluidos de la Ley Federal de Normas Razonables de Trabajo (FLSA) y no ser válida bajo la doctrina de preemption la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271 *et seq.*, en la medida en que concede horas extras a los vendedores de automóviles por alegadamente encontrarse dicha ley local en conflicto con el estatuto federal.

Por entender que no erró el tribunal de instancia, procedemos a confirmar sus dictámenes.

### I

### A. Caso Núm. KLCE-95-01043

El día 24 de mayo de 1994 el Sr. Generoso Pérez Trujillo radicó una querella reclamando horas extras y mesada. El 21 de julio de 1994 Trébol Motors Corporation (peticionaria) contestó la querella y alegó: que el despido estuvo justificado; que Pérez Trujillo trabajó en calidad de agente viajero; ▮ que no trabajó en exceso de cuarenta horas a la semana ni en exceso de ocho horas diarias; y que las cantidades reclamadas eran exageradas

El 22 de septiembre de 1995 la peticionaria solicitó que se dictara sentencia sumaria por los siguientes fundamentos: que la peticionaria es una empresa en el comercio interestatal a la cual le aplica la FLSA; que los vendedores de automóviles fueron excluidos del pago de horas extras por la FLSA; que el propósito de dicha exclusión fue proteger la industria de distribución y venta de automóviles; que la falta de exclusión ▮ de los vendedores de automóviles en la Ley 379 contraviene el propósito de la FLSA de proteger dichas industrias; y que la FLSA ocupó el campo (preemption) haciendo inválida la Ley 379 en la medida en que el estatuto local concede horas extras a los vendedores de automóviles.

El 14 de diciembre de 1995 la Sala Superior de San Juan dictó resolución denegando la solicitud de sentencia sumaria.

Razonó la Sala Superior de San Juan lo siguiente: que la FLSA no puede utilizarse para justificar el incumplimiento de leyes estatales que establezcan un salario mínimo más alto o una semana máxima de trabajo más corta que la dispuesta en la FLSA; que la Ley 379 no está en conflicto con la FLSA ni contraviene su política pública; que al aprobarse la Ley 379 se tomó en consideración la FLSA al disponerse en la Ley 379 que los patronos de industrias cubiertas por la FLSA sólo pagarán horas extras (en exceso de 8 horas diarias) a tiempo y medio; y que la Ley 379 aplica a los vendedores de automóviles ya que esta ley no los excluye y se trata de una legislación local que concede mayores beneficios.

### B. Caso Núm. KLCE-96-00084

El Sr. José Manuel Mercado Reyes instó una querella en contra de la peticionaria el día 15 de agosto de 1994. En dicha querella el Sr. Mercado Reyes reclamó el pago de horas extras, período de tomar alimentos, comisiones, alegados descuentos ilegales y una suma igual en concepto de penalidad.

La peticionaria contestó la querella alegando que el Sr. Mercado Reyes no tenía derecho al pago de horas extras ni a período de tomar alimentos.

El día 11 de diciembre de 1995 la peticionaria solicitó que se dictara sentencia sumaria a su favor desestimando la reclamación por horas extras y período de tomar alimentos. La peticionaria apoyó su solicitud en los mismos fundamentos que fueron esgrimidos en el caso Núm. KLCE-95-01043.

El tribunal de instancia denegó la solicitud de sentencia sumaria mediante resolución de 27 de diciembre de 1995 cuyo archivo en autos de su notificación ocurrió el 29 de diciembre de 1995.

En el caso Núm. KLCE-95-01043 la peticionaria instó el recurso de *certiorari* el día 19 de diciembre de 1995. En el caso Núm. KLCE-96-00084 la petición de *certiorari* fue presentada el 29 de enero de 1996.

En los casos Núm. KLCE-95-01043 y Núm. KLCE-96-00084, la peticionaria imputó error al tribunal de instancia al denegar dicho tribunal las solicitudes de sentencia sumaria, a base de que la Ley 3 no está en conflicto con el FLSA en lo que concierne a vendedores de automóviles por aplicar la regla de mayor beneficio. Por referirse ambos casos a la misma controversia, dictamos Resolución de 21 de mayo de 1996 en la que se dispone la consolidación de los casos Núm. KLCE-95-01043 y Núm. KLCE-96-00084.

## II

### A. Propósitos de la FLSA

La FLSA fue aprobada en el 1938 por el Congreso de los Estados Unidos con el propósito de eliminar las pésimas condiciones de trabajo entonces prevalecientes que impedían el logro de unos niveles mínimos de bienestar para los trabajadores. 29 U.S.C. sec. 202. Con el fin de lograr sus objetivos la FLSA estableció un salario mínimo por hora y una semana máxima de trabajo sin incurrir el patrono en la obligación de pagar horas extras. La FLSA requiere que en exceso de 40 horas a la semana se pague el tiempo trabajado a tiempo y medio.

La FLSA fue enmendada en 1961 para fortalecer y ampliar el alcance de la misma e implantar dicha política pública. Para lograr dicho objetivo la referida enmienda aumentó el salario mínimo a los empleados ya cubiertos por la ley. En adición se extendió el beneficio de salario mínimo a empleados que anteriormente no estaban incluidos en la medida, entre ellos a los vendedores de automóviles. ■ La enmienda realizada, aunque incluyó a los vendedores de automóviles entre los grupos de trabajadores con derecho a salario mínimo, no eliminó la exención en cuanto al pago de horas extras que contenía la FLSA con respecto a los vendedores de automóviles.

### B. Discusión del planteamiento relativo a que la intención del Congreso fue proteger la industria de distribución y venta de automóviles

La peticionaria sostiene que el propósito de establecer exclusiones al FLSA fue proteger a determinadas industrias. Es decir, que la exclusión de los vendedores de automóviles fue establecida, en opinión de la peticionaria, con el objetivo de proteger a la industria de distribución y venta de automóviles.

La peticionaria aduce que esa intención congresional fue descrita en *Marshall v. Champion Center, Inc.*, 443 F. Supp. 406, 407 (USDC Ill. 1978), de la siguiente manera:

*"However, in developing exemptions to the FLSA, Congress was concerned not with the use or nature of the products exempted, but with the structure of the particular industries involved. The legislative history of these provisions shows that the Congress considered profit levels, the types of workers involved, the importance of a given industry to the national and regional economies, and numerous other factors in determining which industries to exempt. Thus, it is not clear that the commission pay basis and unusual work schedules of some employees of automobile dealerships were the dispositive factors in the creation of this exemption. In fact, the various revisions of this provision since it was introduced in 1961 suggest the Congress had no intention of exempting all salesmen paid on a commission basis."*

El caso de Marshall, *supra*, se presentaba en contra de unos distribuidores de motocicletas por haber éstos alegadamente violado las disposiciones sobre salario mínimo y horas extras de la FLSA. Los distribuidores de motocicletas alegaron que estaban exentos de la FLSA porque les aplicaba la exención referente a los vendedores de automóviles ya que las motocicletas constituían automóviles a los fines de la FLSA. Dichos distribuidores señalaron que en la creación de la exención a los vendedores de automóviles fue determinante el hecho de que a estos empleados se les pagaba mediante comisiones y los mismos tenían itinerarios de trabajo inusuales. Al pagarse a los vendedores de motocicletas por comisiones y al éstos también tener itinerarios de trabajo inusuales, los

distribuidores de motocicletas arguyeron que los mismos debían entenderse que estaban incluidos en la exención de vendedores de automóviles. Al denegar la moción de desestimación de los distribuidores de motocicletas, el Tribunal de Distrito Federal de uno de los distritos del estado de Illinois expresa que el uso y naturaleza de los productos, el pago por comisión a los vendedores y los itinerarios de trabajo no fueron los factores determinantes en la creación de la exención de los vendedores de automóviles. Afirma dicho tribunal en Marshall, *supra*, que en el establecimiento de exenciones el Congreso tomó en consideración niveles de ganancias, las clases de trabajadores, la importancia de las industrias y muchos otros factores al eximir a determinadas industrias.

Es nuestro criterio que Marshall, *supra*, al expresar que el enfoque del Congreso al crear exenciones se centró en las características de las diferentes industrias, no establece ni sustenta la alegación de la peticionaria en el sentido de que el Congreso excluyó a los vendedores de automóviles con el objetivo de proteger la industria de distribución y venta de automóviles.

En apoyo de su aserto de que el Congreso tuvo la intención de proteger la industria de distribución y venta de automóviles, la peticionaria cita las expresiones de los senadores Barry Goldwater y Everett M. Dirksen tomadas del historial legislativo de las enmiendas de 1961 (Pub. L. 87-30, 75 Stat. 65), 1961 U.S. Code & Administrative News, págs. 1672, 1673. Las referidas expresiones de los senadores Goldwater y Dirksen pueden resumirse de la manera siguiente: que al aprobarse el estatuto original de la FLSA en 1938 y su principal enmienda aprobada en 1949, el Congreso estuvo consciente de que una aplicación limitada de la ley podía crear dificultades e inequidades al aplicarse a ciertas industrias o actividades económicas; que esas industrias o actividades son de tal naturaleza y se llevan a cabo bajo tales circunstancias que de aplicársele la ley se crearían serios problemas lo que afectaría su eficaz desempeño y su solvencia económica; que el Congreso al estar consciente de estas dificultades creó exenciones para ajustarse a los problemas peculiares de dichas industrias o actividades; y que el daño económico a ciertas industrias por aplicación de la FLSA reduciría las oportunidaes de empleo, derrotando el propósito de la ley. Las mencionadas expresiones de los senadores Goldwatez

Dirksen, de que la eliminación de las exenciones podría perjudicar a determinadas industrias, no sostienen la alegación de la peticionaria de que el Congreso quiso proteger la industria de distribución y venta de automóviles. Los senadores mencionados tenían oposición a las enmiendas a la FLSA de 1961 las cuales eliminaron algunas exenciones. El argumento de dichos senadores, de que las exenciones se establecieron para ajustarse a los problemas peculiares de ciertas industrias o actividades, fue esgrimido con el fin de mantener las exenciones de la FLSA y no pueden ser utilizados como las expresiones del Congreso al aprobarse la FLSA.

### C. La Doctrina de Preemption

Atendemos el planteamiento de la peticionaria de que la FLSA ocupó el campo y la Ley 379, al contravenir la política pública federal de protección de los distribuidores, es nula en la medida en que concede derecho al pago de horas extras a los vendedores de automóviles.

La doctrina sobre ocupación del campo (preemption) surge del Artículo VI, sec. 2 (cláusula de supremacía) de la Constitución Federal. Expresa la citada cláusula que cuando existe un conflicto entre una ley federal y una ley estatal, la ley federal suplanta y prevalece sobre la ley local. *Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 4 I.. Ed 2d 852 (1960); *Maryland v. Louisiana,* 451 U.S. 725 (1981); *Pueblo v. Burgos,* 75 D.P.R. 551, 563 (1953).

Todo análisis de la cuestión de **preemption** comienza con el principio básico de que los poderes de policía (police powers) de los estados no son suplantados por legislación federal excepto que ese sea el propósito claro y manifiesto del Congreso. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 91 LEd 1447 (1947). Es el propósito del Congreso el criterio  determinante en cuanto a **preemption**. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 120 L Ed 2d 407, 112 S Ct. 2608 (1992); *Malone v. White Motor Corp.*, 435 U.S. 497, 55 L Ed 2d 443 (1978).

La intención del Congreso de ocupar el campo puede expresarse explícitamente en el estatuto, o la misma puede estar implícita en la estructura y propósito de la ley. *Jones v. Rath Packing Co.,* 430 U.S.

519, 51 L Ed 604 (1977).

Para determinar si el campo está ocupado en cuanto al derecho de los vendedores de automóviles de cobrar horas extras, debemos primeramente preguntarnos si existe una expresión clara y manifiesta del Congreso de suplantar o prohibir legislación estatal sobre esa área. La mencionada interrogante la contestamos en la negativa. No existe en la FLSA una expresión manifiesta del Congreso de ocupar el campo sobre el área mencionada. La intención del Congreso de no suplantar o prohibir legislación estatal sobre beneficios salariales y condiciones de trabajo ha quedado claramente plasmada en la FLSA en la siguiente disposición:

*"No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal por state law por municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter por a maximum workweek shorter than the maximum workweek established under this chapter..."* 29 U.S.C.A. 218(a).

Del texto antes citado se puede concluir que la FLSA contempla legislación estatal en dicha área. *Doctor's Hospital Inc. v. Silva Recio*, 558 F. 2d 619 (1st Cir. 1977). Debe también notarse que estamos en un área tradicionalmente atendida por legislación estatal. *Rice v. Santa Fe Elevator Corp., supra.*

La legislación con un propósito social generalmente se ha sostenido a base del *"police power"* de los estados ante un ataque constitucional a base de la cláusula de supremacía de la Constitución Federal. *Keystone Colective Service, Inc. v. Recio,* 389 F. Supp. 164 (D. Puerto Rico 1975).

No habiendo en la FLSA una clara expresión del Congreso de ocupar el campo en lo que se refiere al derecho de los vendedores de automóviles de cobrar horas extras, debemos examinar dicho estatuto para determinar si de su texto y objetivos puede concluirse tal propósito.

En *Rice v. Santa Fe Elevator Corp., supra,* el Tribunal Supremo Federal expone las formas en que se puede colegir la intención del Congreso de ocupar el campo en ausencia de una clara expresión a esos fines. Dice dicho tribunal en Rice lo siguiente:

*"The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it. (citas omitidas) Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. (cita omitida) Likewise the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose (citas omitidas). Or the state policy may produce a result inconsistent with the objective of the federal statute."*

Tomando en consideración que la FLSA contempla legislación estatal, no puede concluirse que la FLSA sea una legislación sobre beneficios salariales y condiciones de trabajo tan abarcadora y exhaustiva o que el interés del Congreso sea tan predominante como para ocupar el campo y vedar legislación estatal.

Para concluir el análisis de preemption debemos determinar si existe un conflicto entre la FLSA y la Ley 379 en cuanto al área que nos ocupa o si esta ley local en su aplicación produce resultados inconsistentes con los objetivos de la legislación federal.

De acuerdo a la Exposición de Motivos de la Ley 379 el propósito de esta ley ha sido corregir y eliminar las condiciones de explotación del trabajador, metas que coinciden con los motivos del Congreso al aprobar la FLSA.

La Ley 379 no está en conflicto con la FLSA. La Asamblea Legislativa de Puerto Rico, al aprobar la Ley 379, tomó en consideración la FLSA al disponer lo siguiente:

*"Todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido por las*

*horas extras; disponiéndose, sin embargo, que todo patrono de una industria en Puerto Rico cubierta por las disposiciones de la Ley de Normas Razonables del Trabajo (Fair Labor Standards Act), aprobada por el Congreso de Estados Unidos de América el 25 de junio de 1938, según ha sido o fue subsiguientemente enmendada, sólo vendrá obligado a pagar por cada hora extra de trabajo en exceso de la jornada legal de ocho horas un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado otra norma de trabajo o compensación, o de ambas..."* 29 L.P.R.A sec 274.

La citada disposición denota un propósito de armonizar la legislación federal y la local, aspirando ambas al logro de mejores condiciones de trabajo para los trabajadores.

En lo concerniente al alegado conflicto de leyes, el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito, en *Maccabees Mutual Life Ins. v. Pérez Rosado*, 641 F. 2d 45 (1st Cir. 1986), al analizar el efecto de aplicar la FLSA, la Ley 379 y el Decreto Mandatorio Núm. 4, concluyó que algunos empleados reciben mayores beneficios bajo la ley local que bajo la ley federal, lo que no representa un conflicto de leyes ni un obstáculo a los objetivos congresionales. Ante el planteamiento de que Puerto Rico tiene que abstenerse de extender lo beneficios de su legislación a empleados excluidos en la FLSA (outside salesmen), el mencionado tribunal determinó que la FLSA no prohibe legislación estatal sobre la materia.

En *Eastern Sugar Assoc. v. Peña*, 222 F. 2d 934, 936 (lst Cir. 1955) el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito expresó que Puerto Rico tiene libertad de acción para establecer estándares mayores que los establecidos en la ley federal.

Ante un planteamiento de la compañía querellada sobre un alegado conflicto entre la ley federal y la ley local, el Tribunal Supremo de Puerto Rico, en *Chabrán v. Bull Insular Line,* 69 D.P.R. 269 (1948) expresó que la necesidad de cumplir con una ley local que fije un máximo de horas diarias no crea un conflicto con la ley federal que provee una semana máxima de trabajo. La compañía querellada en Chabrán, *supra*, adujo que tal conflicto surgía debido a que la ley federal guardaba silencio sobre la cuestión de un día máximo de trabajo. El Tribunal Supremo de Puerto Rico expresó en Chabrán, *supra*, que el Congreso no se apropió exclusivamente el campo de las normas a fijarse en relación con horas y salarios de empleados que trabajan en el comercio interestatal y que el hecho de que la ley federal guardara silencio en cuanto al día máximo de trabajo no quiere decir que el Congreso tuvo la intención de suplantar la legislación estatal.

De la discusión precedente se puede concluir que la Ley no conflige con la FLSA, por lo que no puede entenderse que la Ley 379 deba ceder a base de la doctrina de **preemption**. D. Regla de Mayor Beneficio.

El tribunal de instancia en la resolución recurrida determinó que la Ley 379 aplica a los vendedores de automóviles ya que esta ley no los excluye y se trata de una legislación local que concede mayores beneficios. La *"regla de mayor beneficio" fue elaborada al amparo de la Sec. 18 de la FLSA, 29 U.S.C. sec. 218. Permite dicha regla, en el caso de trabajadores cubiertos por la FLSA, que se les aplique la disposición más beneficiosa."* Laborde v. Eastern Sugar Associates, 81 D.P.R. 478 (1956); *Ortiz v. Eastern Sugar,* 85 D.P.R. 95 (1962), *Sánchez v. Best Price Co.,* 102 D.P.R. 379 (1974). Tomando en consideración que la FLSA no concede horas extras a los vendedores de automóviles y que la Ley 379 no los excluye, es inescapable concluir que la Ley 379 es de mayor beneficio. En resumen les aplica la Ley 379 a los vendedores de automóviles y éstos tienen derecho a horas extras.

De lo precedentemente expresado, podemos concluir que de la FLSA no surge la intención expresa del Congreso de prohibir o limitar la legislación estatal en materia de beneficios salariales y condiciones de trabajo y específicamente en cuanto al derecho de los vendedores de automóviles de cobrar horas extras. En adición, la FLSA no es una legislación tan abarcadora y exhaustiva ni revela un interés tan predominante del Congreso como para ocupar el campo y vedar legislación estatal sobre beneficios salariales y condiciones de trabajo. Concluimos, además, que la Ley 379 no está en conflicto con la FLSA ni contraviene su política pública, por lo que no puede sostenerse que esta ley local es nula a base de la doctrina de preemption. Para concluir, debemos manifestar que antes de ser

enmendada la Ley 379 y cuando ocurrieron los hechos, dicha ley aplicaba a los vendedores de automóviles y a base de la regla de mayor beneficio concedía a estos trabajadores el beneficio de horas extras.

Por las razones antes expresadas, concluimos que no erró el tribunal de instancia al denegar las solicitudes de sentencia sumaria presentadas por la peticionaria en los casos de epígrafe.

Se confirman las resoluciones recurridas.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 96 DTA 126

**1.** La Ley Núm. 379, *supra*, exime de la obligación del pago de horas extras a los agentes viajeros y a los vendedores ambulantes. El Art. 19 de la Ley 379, 29 L.P.R.A. sec. 288, define a los agentes viajeros y a los vendedores ambulantes.

**2.** La Ley Núm. 33 de 30 de abril de 1996 enmendó dicha disposición para excluir de su aplicación a los empleados dedicados a la venta de automóviles, camiones y equipo pesado y otros vehículos de arrastre y fines relacionados. El Artículo 2 de dicha ley dispone que comenzará a regir inmediatamente después de su aprobación, por lo que no puede aplicarse retroactivamente al caso que nos ocupa.

**3.** 1961 U.S. Code & Administrative News 1621.