**AMERICAN COPPER & BRASS, INC.,** and **The Bankrupt Estate of Smith and Wofford Plumbing and Industrial Supply, Inc.,** on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**HALCOR S.A., et al., Defendants.**

**No. 04–2771 DV.**

United States District Court, W.D. Tennessee, Western Division.

May 2, 2007.

See, also, 452 F. Supp.2d 821.

B.J. Wade, Glassman Edwards Wade & Wyatt, P.C., Memphis, TN, Jason T. Baker, Ryan M. Hagan, Alexander Hawes & Audet, LLP, San Jose, CA, Mary Jane Fait, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL, Paul Kent Bramlett, Bramlett Law Offices, Nashville, TN, Richard N. LaFlamme, LaFlamme & Mauldin, P.C., Jackson, MI, William M. Audet, Audet & Partners, LLP, San Francisco, CA, for Plaintiffs.

Candy M. Lawson, Paul W. Bartel, II, Davis Polk & Wardwell, Alexandra H. Russello, Kelly M. Hnatt, Maren Wax, Matthew P. Bosher, Sameer Nitanand Advani, Scott S. Rose, Sean S. Buckley, William H. Rooney, Willkie Farr & Gallagher LLP, Aidan Synnott, Danielle M. Aguirre, Moses Silverman, Susanne M. Kandel, Paul Weiss Rifkind Wharton & Garrison, New York, NY, David R. Esquivel, Joshua Ray Denton, Robert Dale Grimes, Bass Berry & Sims PLC, Colin J. Carnahan, Paul A. Alexis, Boult Cummings Conners & Berry, Nashville, TN, Jerome A. Broadhurst, Apperson, Crump & Maxwell, PLC, J. Brook Lathram, Burch Porter & Johnson, Robert L. Crawford, Wyatt Tarrant & Combs, James R. Newsom, III, Harris

Shelton Hanover Walsh, PLLC, Memphis, TN, Mark S. Olson, Ranelle A. Leier, Oppenheimer Wolff & Donnelly, Minneapolis, MN, David I. Gelfand, Matthew I. Bachrack, Cleary Gottlieb Steen & Hamilton LLP, Washington, DC, Kevin M. Kearney, Robert B. Fleming, Jr., Robert J. Fluskey, Daniel C. Oliverio, Hodgson Russ LLP, Buffalo, NY, for Defendants.

## ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

DONALD, District Judge.

Before the Court is Plaintiffs' motion (D.E.# 378) to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and for leave to file a second amended complaint. The original class action complaint was filed with this Court by American Copper & Brass, Inc. and The Bankrupt Estate of Smith and Wofford Plumbing and Industrial Supply, Inc. on September 24, 2004 against twenty-three defendants (six located in the United States, seventeen located throughout Europe), alleging a global price-fixing conspiracy which resulted in Plaintiffs' paying artificially high prices for copper tubing in the United States. Reversing direction after ruling in favor of Plaintiffs on numerous motions to dismiss, on October 10, 2006 the Court dismissed the complaint for lack of subject matter jurisdiction on grounds that Plaintiff had failed to satisfy minimum pleading requirements. On October 31, 2006, Plaintiffs filed the present motion for reconsideration. For the reasons stated herein, the Court denies the motion and affirms its dismissal of the case.

## I. LEGAL STANDARD

■ A motion to alter or amend judgment made pursuant to Fed.R.Civ.P. 59(e) may be made for one of three reasons: 1) an intervening change of controlling law; 2) availability of evidence not previously available; or 3) necessity to correct a clear error of law or prevent manifest injustice. *Helton v. ACS Group,* 964 F.Supp. 1175, 1182 (E.D.Tenn.1997).

■ "A motion ... to alter or amend judgment under Fed.R.Civ.P. 59(e), is not intended to be utilized to relitigate issues previously considered.... [W]here the movant is attempting to obtain a complete reversal of the court's judgment by offering essentially the same arguments presented on the original motion, the proper vehicle for relief is an appeal." *Keweenaw Bay Indian Community v. State of Michigan,* 152 F.R.D. 562, 563 (W.D.Mich.1992); *aff'd,* 11 F.3d 1341 (6th Cir.1993) (citations omitted).

## II. BACKGROUND

In the fall of 2006, the Court was confronted with six motions for reconsideration and/or certification for interlocutory appeal by various groups of defendants and the plaintiffs in this case. On October 3, 2006, the presiding magistrate judge granted a stay of discovery as to some of the defendants, pending resolution of the jurisdictional matters at issue in the motions for reconsideration, while allowing discovery to proceed as to other defendants. Given this disarray, the Court sought to bring order to these complex proceedings and resolution to the issues that prevented the case from moving forward.

All of the pending motions for reconsideration challenged or raised the issue of the Court's personal jurisdiction over the European plaintiffs. The Court had earlier grappled with the personal jurisdiction issue in its September 13, 2006 dismissal of Plaintiffs' complaint against Defendant Mueller Europe. In that ruling, the Court observed that Plaintiffs' complaint

was based entirely on a European Commission decision regarding a conspiracy on another continent. The Court concluded that, in addition to failing to demonstrate "minimum contacts" with the U.S. market, Plaintiffs had failed to provide any factual support for their allegations that the moving defendant's actions abroad had an intended injurious effect in the U.S. or that defendant was part of a conspiracy targeted at the U.S. market. Consequently, the Court ruled that Plaintiffs had failed to establish the Court's personal jurisdiction over the moving defendant. Plaintiffs argued strenuously that they were not required to prove the existence of a conspiracy at this early stage. The Court responded by quoting the case upon which Plaintiffs had chiefly relied for their "conspiracy theory" of jurisdiction:

> The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough. Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums.

*Chenault v. Walker*, 36 S.W.3d 45, 55 (Tenn.2001).

The Court was prepared to apply this perspective on personal jurisdiction to the petitions for reconsideration by all nine moving European defendants. However, one of these defendants, Halcor S.A., also challenged the Court's subject matter jurisdiction over the case. Since a subject matter challenge pertains to the case as a whole rather than to particular defendants, the Court chose to examine this challenge first before turning to the individual motions pertaining to personal jurisdiction.

Halcor argued that Plaintiffs had failed to meet the standards for the assertion of U.S. antitrust jurisdiction under the Sherman and Clayton Acts over conduct involving trade with foreign nations imposed by the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a.[1] Specifically, Halcor asserted that subject matter jurisdiction over Plaintiffs' action was lacking because Plaintiffs had presented no evidence that the alleged cartel had a "direct, substantial, and reasonably foreseeable effect" on the U.S. market, as required by the FTAIA.

The Court determined that Halcor's application of the FTAIA jurisdictional standard was based upon a fundamental

---

**1.** The FTAIA excludes from the Sherman Act conduct involving trade or commerce with foreign nations, unless certain criteria are met. This exclusion has an exception for import trade or import commerce. Also exempt from exclusion from the Sherman Act is conduct which has a direct, substantial and reasonably foreseeable effect on United States commerce which gives rise to a claim under the Sherman Act. In its own words, the FTAIA provides that

> [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect—

> (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
> (2) such effect gives rise to a claim under the provisions of [the Sherman Act], other than this section.
> If [the Sherman Act] appl[ies] to such conduct only because of the operation of paragraph 1(B), then [the Sherman Act] shall apply to such conduct only for injury to export business in the United States.
> 15 U.S.C. § 6a (2000).

mischaracterization of the complaint. Although the complaint devotes an entire section to the "European Union Action," the complaint does not connect this action directly to the violations or injuries alleged. Plaintiffs instead allege that "Defendants sold and shipped substantial quantities of Copper Plumbing Tubes in a continuous and uninterrupted flow *in interstate commerce to customers located in states other than the states in which the Defendants produced Copper Tubing.*" (Consol. Am. Class Action Compl. ¶ 44.) (emphasis added). Plaintiffs go on to allege that Defendants engaged in a conspiracy to fix prices of Copper Plumbing Tubes *in the United States* at "anti-competitive prices," resulting in economic injury to domestic purchasers. *Id.* ¶¶ 61–67. (emphasis added). The complaint alleges that each named defendant "directly or through its subsidiaries and/or affiliates, produced Copper Tubing and *sold it throughout the United States*". *Id.* ¶¶ 10–32. (emphasis added). Although Plaintiffs aver that the alleged price fixing conspiracy is "international in nature, scope and effect" and that the copper tubing market is "global," there is only a single passing mention of "foreign trade" in the complaint's allegations. *Id.* ¶¶ 60, 66. Since the violations alleged involve primarily domestic conduct and domestic injury, Plaintiffs' allegations must be analyzed as direct Sherman Act claims without resort to the qualifying provisions of the FTAIA. *See Dee K Enter. Inc. v. Heveafil Sdn. Bhd.,* 299 F.3d 281, 286 (4th Cir.2002). Consequently, the Court concluded that, as it had earlier determined, Halcor's FTAIA subject matter jurisdiction challenge was a losing argument.[2]

However, the Court's FTAIA reexamination, combined with its previous findings as to personal jurisdiction in the Mueller Europe dismissal, impelled the Court to reflect more broadly on the issue of subject matter jurisdiction.[3] On its face, the complaint appears to satisfy Fed.R.Civ.P. 8(a)'s requirement of a "short and plain statement of the grounds upon which the court's jurisdiction depends." Plaintiffs invoked the Court's jurisdiction pursuant to 28 U.S.C. § 1331 and 1337, and Sections 4 and 16 of the Clayton Act, to recover damages for, and obtain injunctive relief from, Defendants' alleged violation of Section 1 of the Sherman Act. Title 28 U.S.C. § 1331 grants the Court original jurisdiction over civil actions involving federal questions generally, and § 1337 grants jurisdiction over commerce and antitrust regulations specifically. The Sherman Act makes illegal any contract, trust or conspiracy in restraint of trade. The Clayton Act grants the right to sue to persons injured by violations of the antitrust laws, including the Sherman Act. All the necessary elements of a federal question action appear to be present.

Yet after reviewing the multitude of documents filed over two and a half years by the twenty-five named parties to the suit, the Court found something fundamentally troubling at the heart of Plaintiffs' action. In its October 10, 2006 order of dismissal, the Court noted that

in both their amended complaint and in their subsequent responses Plaintiffs have relied entirely on facts from the

---

**2.** It is on the basis of this conclusion that the Court's October 10, 2006 order dismissing the case contains no mention of the FTAIA. Unfortunately, by not making this point explicit in its order, the Court sparked some unnecessary debate as to the foundation of the Court's dismissal.

**3.** "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

EC press release, peppered with language from the Sherman and Clayton Acts and an occasional unsupported, conclusory statement about a price-fixing conspiracy in the U.S. In so doing, Plaintiffs have crafted a complaint with the appearance of legitimacy. Close scrutiny reveals, however, that its core is hollow, i.e., it is without a factual foundation. Plaintiffs have simply "cut-and-pasted" into their complaint the collusive activities found by the E.C. to have taken place in Europe and tacked on "in the United States and elsewhere." The Court concluded that Plaintiffs had failed to establish that its assertion of federal question jurisdiction had any evidentiary foundation and must be dismissed.

## III. DISCUSSION

In their motion to alter or amend judgment, Plaintiffs argue that the Court erred by dismissing Plaintiffs' claims on the merits "under the guise of a subject matter jurisdiction motion." (Pls.' Mot. Alter or Amend J. 10.) Plaintiffs stress that insufficiency or invalidity of Plaintiffs' claims is not proper grounds for finding lack of subject matter jurisdiction, citing an impressive body of case law. *Id.* at 7–10. Plaintiffs further argue that the Court has improperly imposed upon them a heightened pleading standard beyond that required under Fed.R.Civ.P. 8. *Id.* at 10–12. Finally, Plaintiffs assert that the global nature of the copper tubing market and the interrelatedness between the European and U.S. markets provides a sufficient factual foundation for their price-fixing conspiracy claims. *Id.* at 14–17.

The Court has an obligation to determine whether subject-matter jurisdiction exists, even where jurisdiction is unchallenged by either party. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 1244, 163 L.Ed.2d 1097 (2006). If such a determination turns on contested facts, the trial court may review the evidence in order to resolve the issue. *Id.* When the Court concludes that subject-matter jurisdiction is lacking, it must dismiss the complaint in its entirety. *Id.*

The Supreme Court has long held that the federal courts may not entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 48 L.Ed. 795 (1904)). Such federal question claims unworthy of the courts' jurisdiction have also been labeled "wholly insubstantial," "obviously frivolous," and "plainly insubstantial." *Id.* (citations omitted).

However, as the Sixth Circuit has made clear, the test for dismissal is a rigorous one and a claim is to be deemed "wholly insubstantial and frivolous" "only where the plaintiff's claim has no plausible foundation or is clearly foreclosed by a prior Supreme Court decision." *Moore v. LaFayette Life Ins. Co.* 458 F.3d 416, 444 (6th Cir.2006). As Plaintiffs make clear, the Supreme Court has expressed strong disapproval of dismissals for lack of subject matter jurisdiction that are in reality determinations on the merits. (Pls.' Mot. Alter or Amend J. 7.) (citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

With the foregoing precedent as background, the Court wishes to make clear that its dismissal of this case was based on neither the merits of Plaintiffs' case nor the likelihood of Plaintiffs' ultimately prevailing. The Court's sole determination is that Plaintiffs' claims are "wholly insubstantial" in that they are without any evidentiary basis whatsoever and that Plaintiffs do not legitimately allege otherwise.

In concluding that Plaintiffs' complaint is "insubstantial," the Court does not mean

to convey that the issues at stake are not weighty or that the alleged injury is insignificant. The Court instead concludes that Plaintiffs' action, while raising important restraint of trade issues, has no substance of its own but rather illegitimately borrows its substance entirely from elsewhere. As such, Plaintiffs' complaint is essentially a work of fiction.

To allow Plaintiffs to proceed with discovery in hopes that their speculation bears fruit would be unjust and a gross abuse of the judicial system. The discovery process is not available where, at the complaint stage, a plaintiff has nothing more than mere speculation. While this restriction may impose upon a plaintiff the task of some detective work in advance of filing a complaint, it is necessary to protect society from the costs of baseless, frivolous litigation.

Plaintiffs' wholesale borrowing of facts contained in the EC decision and transforming them into allegations of conduct within the U.S. is so novel and audacious that the Court has searched in vain for any case precedent which confronts the issue of jurisdiction under such circumstances. The Court recognizes that the substantiality doctrine is applicable to deny subject matter jurisdiction in only the rarest of cases, but the Court deems the instant complaint to be such a case. To rule otherwise would set a perilous precedent. In fact, the Court could envision a cottage industry built around the monitoring of legal proceedings abroad and, through similar legal alchemy, transforming foreign controversies into litigation "gold" in the U.S. courts.

Contrary to Plaintiffs' assertion, in dismissing this case for lack of any evidentiary foundation the Court has not imposed a heightened pleading standard beyond Fed. R.Civ.P. 8's "short and plain statement" requirement.[4] Rule 8(a)(1)'s requirement of "a short and plain statement of the grounds upon which the court's jurisdiction depends" is simple and straightforward. However, where disputes over jurisdictional facts exist, the Court is empowered to resolve these disputes by making reasonable inquiry into the facts through affidavits or otherwise.[5] *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915–16 (6th Cir.1986); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ("It is elementary that a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached. Jurisdictional

---

**4.** Although the Court dismissed the complaint on grounds that the allegations in the complaint are insufficient to show that the federal court has jurisdiction over the subject matter of the case as required under Fed. R. Civ. Proc. 8(a)(1), Plaintiffs argue at length that the judgment should be vacated because they have satisfied the liberal pleading standard of Fed. R. Civ. Proc. 8(a)(2). *See* (Pls.' Mot. Alter or Amend J. 11–12.) The difficult distinction between dismissal for lack of subject matter jurisdiction and merit-based dismissal for failure to state a claim is at the root of this "disconnect." The language in the Court's October 10, 2006 order describing the legal foundation for its subject matter jurisdiction determination was lacking in precision and

the Court has attempted to remedy that lack in the present order.

**5.** In the Court's review of the record, it determined that there had been ample presentation on the issue of the adequacy of the factual predicate underlying Plaintiffs' complaint, and chose to exercise its discretion without requiring a hearing or further written submissions. However, Plaintiffs have complained that the Court dismissed their claim on subject matter jurisdiction grounds without giving Plaintiffs an opportunity to respond. (Pls.' Mot. Alter or Amend J. 7.) Accordingly, the Court has given careful consideration to Plaintiffs' arguments in the instant motion, and Defendant's response, in ruling on the motion to amend.

issues are for the court-not a jury-to decide, whether they hinge on legal or factual determinations."). No presumptive truthfulness applies to the factual allegations of jurisdiction and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *U.S. v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994).

Plaintiffs assert that the Court was incorrect in its determination that Plaintiffs have not presented any evidence in support of their Sherman Act claims. They argue that although the EC decision was limited in scope to the European Union, the decision is nonetheless relevant as support for their claims. This argument is based upon Plaintiffs' assertion that the copper market is "global" and that U.S. and European copper markets are "intertwined" and "interrelated." (Pls.' Mot. Alter or Amend J. 14–17.)

As evidence supporting this assertion, Plaintiffs offer an affidavit by economist Dr. Robert D. Tollison. In his statement, Dr. Tollison observes that "copper tubing is imported into the United States from European and other countries and exported to Europe and other countries from the United States." (Tollison Decl. ¶ 9A.) Largely based on this observation, Dr. Tollison concludes, reiterating the conclusory language of the complaint nearly verbatim, that the "market for copper plumbing tube is global in nature"; that "European and United States copper tube markets are interrelated and that pricing of copper plumbing tube in Europe affects the pricing of copper plumbing tubes in the United States and vice versa." *Id.* ¶¶ 9, 9A. He further concludes that "[b]ecause of the interrelationships of pricing and markets for copper plumbing tube in the U.S. and abroad, a price-fixing conspiracy in the copper plumbing tube market would need to be effectuated in both the U.S. and

foreign markets in order to be effective." *Id.* ¶ 9H.

Perhaps more than anything else in the record, Dr. Tollison's statement persuades the Court that it was correct in determining that Plaintiffs complaint is without substance. The assertion that copper tubing is "global" in the sense that both U.S. and European producers compete in each other's markets is unobjectionable. However, it is entirely irrelevant to Plaintiffs' task of demonstrating that a conspiracy existed to fix copper tubing prices in the U.S. Only if the products sold in both markets are interchangeable would there be any necessity of extending the European price-fixing scheme to producers for the U.S. market. Defendants have argued persuasively that the two markets have distinct standards and that their products are not interchangeable, undermining Plaintiffs assertion that "Defendants needed to ... collude in both regions in order to effectively collude in either region," (Consol. Am. Class Action Compl. ¶ 60). This contention is unaddressed in Dr. Tollison's affidavit.

A price-fixing scheme is workable only when the market for the product at issue is effectively controlled by participants in the scheme and the cartel members remain strictly adhere to the agreed-upon price structure. Thus, for the price-fixing scheme addressed in the EC Decision to succeed, as it apparently did, it required the participation of all the major copper tubing producers for the European market, regardless of physical location. However, since European buyers are precluded from using U.S.-standard tubing, producers of U.S.-standard tubing were irrelevant to this scheme. Similarly, in order to establish an effective cartel in the U.S. market, producers for that market would have to collude in maintaining prices of U.S.-standard tubing. The actions of pro-

ducers of products unusable in the U.S. would be of no consequence to this price-fixing effort.

Dr. Tollison's statement that pricing of copper tubing in Europe affects the pricing of copper tubing in the United States and vice versa may be true in the abstract sense that everything in the world marketplace affects everything else. Slightly less abstractly, one could argue that demand for one type of copper product in a particular market affects the price of copper generally, indirectly impacting the price of a different copper product in a separate market. However, such abstract or tenuous interrelatedness provides no support for Plaintiffs' claim that a European cartel requires a corresponding U.S. cartel. Thus, the Court finds Plaintiffs' argument to be implausible, purely speculative and unsupportive of its Sherman Act claim. Accordingly, and because the Court is unpersuaded that its order dismissing the case was based on an error of law, the Court **DENIES** Plaintiffs' motion for reconsideration.

Plaintiffs have requested leave to file a second consolidated amended complaint. The Court has reviewed the proposed complaint and has determined that it provides nothing that would alter the Court's finding of insubstantiality. Accordingly, the Court finds that allowing Plaintiffs to amend their complaint would serve no purpose and therefore **DENIES** the motion to file a second amended complaint.

**IT IS SO ORDERED.**